Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 1 of 100 PageID #: 9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

===================================================X

RONALD YUHAS,

                         Plaintiff,

    -against-

ASSOCIATED UNIVERSITIES, INC., ZEP, INC., and
DOW CHEMICAL CO.,

                         Defendants.

===================================================X

**AMENDED
SUMMONS**

Index No.: 616363/2019

Date Purchased: 08/20/19

Plaintiff designates SUFFOLK COUNTY as place of trial.

Basis of venue is:
Plaintiff's Residence
5 Brenner Road,
Coram, NY 11727

**TO THE ABOVE NAMED DEFENDANTS:**

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       September 10, 2019

                      Yours, etc.

          By:    */S/ J. Lanni E-Sign [091019 17:48]*
                 _____

                 **JOSEPH LANNI**
                 The Jacob D. Fuchsberg Law Firm, L.L.P.
                 Attorneys for Plaintiff
                 RONALD YUHAS
                 3 Park Avenue, 37th Floor
                 New York, NY 10016
                 T. (212) 869-3500
                 *Email: j.lanni@fuchsberg.com*

1

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 2 of 100 PageID #: 10

TO:

ASSOCIATED UNIVERSITIES, INC.
1400 16th Street, NW
Washington, D.C. 20036-2252

ZEP, INC.
3330 Cumberland Blvd., Ste. 700
Atlanta, GA 30339

DOW CHEMICAL CO.
2211 H. H. Dow Way
Midland, MI 48674

2

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 3 of 100 PageID #: 11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
===============================================X

RONALD YUHAS,

                       Plaintiff,

    -against-

ASSOCIATED UNIVERSITIES, INC., ZEP, INC., and
DOW CHEMICAL CO.,

                    Defendants.
===============================================X

**VERIFIED
AMENDED
COMPLAINT**

Index No.: 616363/2019

Date Purchased: 08/20/19

Plaintiff RONALD YUHAS, by his attorneys JOSEPH LANNI and THE JACOB D.
FUCHSBERG LAW FIRM, L.L.P., as and for his Verified Complaint, complaining of the
defendants, respectfully alleges, upon information and belief, as follows:

**PARTIES**

1.  At all times subsequently referenced, plaintiff RONALD YUHAS was and is a resident of
    the County of Suffolk and the State of New York.

2.  At all times subsequently referenced, plaintiff RONALD YUHAS[1] resides at 5 Brenner
    Road, Coram, NY 11727.

---

[1] RONALD YUHAS is variously referred to as MR. YUHAS and YUHAS throughout this Amended Complaint.

1

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 4 of 100 PageID
#: 12

3. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and still is a purported domestic not-for-profit corporation organized and existing under the laws of the State of New York.

4. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and still is a purported domestic not-for-profit corporation with its principal place of business situated in the District of Columbia at 1400 16th Street NW, Washington, DC 20036-2252.

5. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC.,[2] was and still is a purported domestic not-for-profit corporation created by a charter issued by the Board of Regents of the State University of New York, Department of Education, State of New York.

6. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic not-for-profit corporation that conducted business operations in the State of New York.

7. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic not-for-profit corporation that transacted business within the State of New York.

---

[2] ASSOCIATED UNIVERSITIES, INC., is variously referred to as AUI throughout this Complaint.

2

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 5 of 100 PageID #: 13

8.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic not-for-profit corporation that derived substantial revenue from conducting business operations, activities and transactions in the State of New York.

9.  At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic not-for-profit corporation that derived substantial revenue from goods used or consumed and/or services rendered in the State of New York.

10. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic not-for-profit corporation that expected or should reasonably have expected that its acts, omissions and conduct had consequences in the State of New York.

11. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic not-for-profit corporation that derived substantial revenue from interstate or international commerce in the regular course of its business operations, activities and transactions within the State of New York.

12. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic not-for-profit corporation that is a research management company that operates, manages, directs, controls and supervises facilities, including research laboratories, for the scientific research community.

3

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 6 of 100 PageID #: 14

13. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is a domestic not-for-profit corporation that is a research management company that operates, manages, directs, controls and supervises facilities, including research laboratories, for the U.S. Department of Energy.

14. At all times subsequently referenced, defendant ASSOCIATED UNIVERSITIES, INC., was and is the operating contractor that operated, managed, directed, controlled and supervised a facility for the U.S. Department of Energy known as Brookhaven National Laboratory located in Upton, NY, during the approximate period 1948 – 1998.

15. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation organized and existing under the laws of the State of Delaware.

16. At all times subsequently referenced, defendant ZEP, INC.,[3] was and is a business corporation with its principal place of business situated in the State of Georgia at 3330 Cumberland Blvd., Ste. 700, Atlanta, GA 30339.

17. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that conducted business operations in the State of New York.

---

[3] ZEP, INC., is variously referred to as ZEP throughout this Complaint.

4

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 7 of 100 PageID #: 15

18. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that transacted business within the State of New York.

19. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that derived substantial revenue from conducting business operations, activities and transactions in the State of New York.

20. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that derived substantial revenue from goods used or consumed and/or services rendered in the State of New York.

21. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that expected or should reasonably have expected that its acts, omissions and conduct had consequences in the State of New York.

22. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that derived substantial revenue from interstate or international commerce in the regular course of its business operations, activities and transactions within the State of New York.

23. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that was and is the manufacturer, marketer, distributor, and seller of industrial and commercial cleaning solvents primarily containing a toxic chemical known as trichloroethylene (i.e., "TCE") as an active ingredient.

5

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 8 of 100 PageID #: 16

24. At all times subsequently referenced, defendant ZEP, INC., was and is a business corporation that manufactured, marketed, distributed, and sold industrial and commercial cleaning solvents containing trichloroethylene (i.e., "TCE") to defendant ASSOCIATED UNIVERSITIES, INC., as the operating contractor of Brookhaven National Laboratory located in Upton, NY, and other operating contractors during the approximate period 1948 – present.

25. At all times subsequently referenced, defendant DOW CHEMICAL CO. was and is a business corporation organized and existing under the laws of the State of Delaware.

26. At all times subsequently referenced, defendant DOW CHEMICAL CO.[4] was and is a business corporation with its principal place of business situated in the State of Michigan at 2211 H. H. Dow Way, Midland, MI 48674

27. At all times subsequently referenced, defendant DOW CHEMICAL CO. was and is a business corporation that conducted business operations in the State of New York.

28. At all times subsequently referenced, defendant DOW CHEMICAL CO. was and is a business corporation that transacted business within the State of New York.

---

[4] DOW CHEMICAL CO., is variously referred to as DOW throughout this Complaint.

6

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 9 of 100 PageID #: 17

29. At all times subsequently referenced, defendant DOW CHEMICAL CO. was and is a business corporation that derived substantial revenue from conducting business operations, activities and transactions in the State of New York.

30. At all times subsequently referenced, defendant DOW CHEMICAL CO. was and is a business corporation that derived substantial revenue from goods used or consumed and/or services rendered in the State of New York.

31. At all times subsequently referenced, defendant DOW CHEMICAL CO. was and is a business corporation that expected or should reasonably have expected that its acts, omissions and conduct had consequences in the State of New York.

32. At all times subsequently referenced, defendant DOW CHEMICAL CO. was and is a business corporation that derived substantial revenue from interstate or international commerce in the regular course of its business operations, activities and transactions within the State of New York.

33. At all times subsequently referenced, defendant DOW CHEMICAL CO. was and is a business corporation that was and is the manufacturer, marketer, distributor, and seller of industrial and commercial cleaning solvents primarily containing a toxic chemical known as trichloroethylene (i.e., "TCE") as an active ingredient.

7

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 10 of 100 PageID #: 18

34. At all times subsequently referenced, defendant DOW CHEMICAL CO. was and is a business corporation that manufactured, marketed, distributed, and sold industrial and commercial cleaning solvents containing trichloroethylene (i.e., "TCE") to defendant ASSOCIATED UNIVERSITIES, INC., as the operating contractors of Brookhaven National Laboratory located in Upton, NY, and other operating contractors during the approximate period 1948 – present.

**JURISDICTION**

35. That the jurisdiction of this Court is premised upon the plaintiff's residence in the State of New York, defendants' transaction of business in the State of New York, defendants' substantial business operations in the State of New York, defendants' derivation of substantial revenue from business transactions, operations and activity in the State of New York, and the transactions, acts, omissions, conduct and occurrences by the defendants that form, in pertinent part, the factual basis of the causes of action in plaintiff's Complaint that occurred in the State of New York.

**VENUE**

36. That the venue of this action is premised upon the plaintiff's residence in the County of Suffolk, defendants' transaction of business in the County of Suffolk, defendants' substantial business operations in the County of Suffolk, defendants' substantial derivation of revenue from business transactions, operations and activity in the County of Suffolk, and the transactions, acts, omissions, conduct and occurrences by the defendants that form, in

8

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 11 of 100 PageID #: 19

pertinent part, the basis of the causes of action in plaintiff's Complaint that occurred in the County of Suffolk.

## JURY DEMAND

37. That plaintiffs demand trial by jury of all issues presented in this action that are triable by a jury as of right pursuant to the applicable statutes and court rules.

## INTRODUCTION

38. This action is brought by RONALD YUHAS for kidney disease and other injuries resulting from his exposure to trichloroethylene (TCE) and other toxic substances at Brookhaven National Laboratory (BNL). Mr. YUHAS' claims in this action are brought against DOW and ZEP as the manufacturers, marketers, distributors, and sellers of the TCE products that resulted in Mr. YUHAS' exposure and consequent injuries. Mr. YUHAS' claims are also brought against AUI for the legacy contamination[5] of BNL through environmental pollution of the site with TCE and other toxic substances during the period of time that YUHAS was employed by Brookhaven Science Associates (BSA) at the laboratory. Moreover, YUHAS routinely used TCE cleaning solvents during the period of his BSA employment that had been stockpiled by AUI when it was the BNL operating contractor.

39. RONALD YUHAS, now 77 years old, worked at Brookhaven National Laboratory for more than 35 years as a computer operator, information technology shift supervisor, and

---

[5] "Legacy contamination" refers to the toxic chemicals and substances that remain polluting the land, buildings, and structures in a location after the polluter has ceased ownership, operation, possession or management of the site or has ceased activities at a site.

9

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 12 of 100 PageID #: 20

telecommunications technician. His employment involved duties at locations throughout the BNL site. MR. YUHAS was an employee of AUI during the period 1964 – 1998 and an employee of BSA during the period 1998 – 2007. YUHAS regularly used TCE[6] cleaning solvents on a daily basis in the course of his work duties pursuant to the directions of AUI managers. YUHAS developed renal cystic disease, chronic kidney disease, COPD, Crohn's disease and other consequent illnesses, injuries and medical problems as a result of his toxic exposures to TCE and other toxic substances at BNL. YUHAS only used TCE solvents at BNL during his long career at the laboratory.

40. TCE is classified and scientifically established as a "known human carcinogen" and a toxic substance hazardous to human health by agencies of the U.S. government, International Association for Research on Cancer, and a broad consensus of knowledgeable experts in the fields of science and medicine.

41. AUI ordered, purchased, delivered stored, and used vast quantities of TCE products at BNL. The TCE was delivered to BNL in aerosol spray cans, spray bottles, bottled liquid, drum / barrel and liquid bulk form. The vast majority of TCE products at BNL were manufactured, distributed, sold and placed into the stream of commerce by DOW and ZEP. AUI negligently supplied, directed, and instructed workers to use TCE solvents during the course of their work duties at BNL. AUI negligently failed to provide protective measures to workers from the ultra-hazardous, hazardous and dangerous risks of TCE exposure through personal use.

---

[6] TCE is the abbreviation for trichloroethylene and is the primary active ingredient in the cleaning solvents used by MR. YUHAS at BNL used and/or sold by the defendants at BNL. Trichlorethylene and TCE are variously used interchangeably throughout this Complaint. The specific TCE products used by YUHAS at BNL are identified in this Complaint. DOW and ZEP supplied the vast majority of the TCE cleaning solvents used at BNL during the period 1947 – 2006.

10

Case 2:19-cv-05475-GRB-RML     Document 1-2     Filed 09/26/19     Page 13 of 100 PageID #: 21

AUI negligently failed to provide proper and adequate safety instructions on the uses of TCE to workers to prevent, avoid or limit the ultra-hazardous, hazardous and dangerous risks of TCE exposure through personal use. AUI negligently failed to provide proper and adequate warnings about the ultra-hazardous, hazardous and dangerous risks of TCE exposure, including its classification as a known carcinogen and/or toxic chemical to workers at the site. AUI negligently failed to safely dispose of TCE at BNL. AUI negligently failed to provide workers with instructions, directions and methods to safely dispose of TCE at BNL. AUI negligently caused pervasive environmental pollution of BNL with TCE and other toxic substances that persisted long after its termination by the DOE as the operating contractor in 1998. AUI negligently contaminated BNL with TCE and other toxic substances that persisted long after its termination by the DOE as the operating contractor in 1998. AUI negligently, recklessly and intentionally stockpiled TCE at BNL after DOE banned its use in 1990. AUI negligently, recklessly and intentionally stockpiled the TCE cleaning solvents and degreasers at BNL that were later used by BSA employees during the period 1998 – 2006 if not later.

42. AUI negligently stored, used, handled, discharged, released, discarded and disposed of TCE solvents and other toxic substances resulting in the pervasive environmental pollution and toxic contamination of buildings, structures, facilities, soils, surface waters, groundwater, ambient indoor air and drinking water supplies throughout the BNL site thereby subjecting YUHAS and many other workers to the dangerous risks of TCE exposure.

43. AUI fraudulently concealed from YUHAS and many other workers that BNL was dangerously polluted and contaminated with TCE – and other toxic substances – in the

11

buildings, structures, facilities, soils, surface waters, groundwater, ambient indoor air and drinking water supplies presenting serious risks of harm, injury, illness and death to people on the site. AUI fraudulently concealed from YUHAS and many other workers for years after it was terminated as the BNL operating contractor that the TCE and toxic chemical pollution and contamination presented serious risks to their health from exposure through inhalational, trans-dermal, ingestive, and vapor intrusive routes.

44. ZEP and DOW manufactured, marketed, distributed, sold and placed into the stream of commerce the TCE solvents purchased and used by AUI at BNL that was supplied to Mr. YUHAS and other workers. ZEP and DOW negligently placed into the stream of commerce the TCE solvent products that were not reasonably safe for intended and foreseeable uses. ZEP and DOW negligently failed to provide proper and adequate safety instructions on the uses of TCE to YUHAS and other workers. ZEP and DOW negligently failed to provide proper and adequate warnings about the dangerous risks of TCE exposure to YUHAS and other workers.

45. The negligence of AUI, ZEP and DOW caused, contributed to and were substantial factors resulting in Mr. YUHAS's renal cystic disease, chronic kidney impairment, COPD, Crohn's disease, and consequent injuries, illnesses, harm, losses and damages.

12

## FACTS COMMON TO ALL CAUSES OF ACTION

### The Disastrous Pollution, Contamination & Exposures at Brookhaven National Laboratory to Hazards, Dangers & Risks to Human Health

46. The events, actions, conduct, activities, omissions, transactions, occurrences, incidents and circumstances at issue in this matter include, but are not limited to, the following facts:

### Brookhaven National Laboratory

47. Brookhaven National Laboratory (BNL) occupies an approximately 5,300-acre site in Upton, NY, in Suffolk County on Long Island.

48. BNL is an atomic, nuclear and high-energy physics, chemical and biologic research facility with numerous buildings, structures and scientific facilities including three nuclear reactors[7], Relativistic Heavy Ion Collider, Alternating Gradient Synchotron, National Synchotron Light Source II, Accelerator Test Facility, Tandem de Graaff Electrostatic Accelerator, Space Radiation Laboratory and computational science supercomputer research laboratories.

49. BNL has existed since 1947.

50. BNL is owned by the U.S. Department of Energy (USDOE).

51. USDOE has provided for the operation of BNL by annual "operating contract" with a private "operating contractor" since 1947.

---

[7] The Brookhaven Graphite Research Reactor and High Flux Beam Reactor were decommissioned and not operational during the period of time that the plaintiff worked at Brookhaven National Laboratory

13

Case 2:19-cv-05475-GRB-RML     Document 1-2     Filed 09/26/19     Page 16 of 100 PageID #: 24

52. By the 1990's, the "operating contract" paid the "operating contractor" hundreds of millions of taxpayer dollars to operate BNL.

53. The annual "operating contract" was lucrative to whoever was the "operating contractor".

54. The "operating contractor" for BNL during the period 1947 – 1998 was ASSOCIATED UNIVERSITIES, INC. (AUI).

55. The "operating contractor" for BNL during the period 1998 – present is BROOKHAVEN SCIENCE ASSOCIATES, L.L.C. (BSA).

56. AUI collected billions of taxpayer dollars in revenue as the "operating contractor" for BNL.

57. USDOE terminated the "operating contract" with AUI in 1998 for the latter's breach and gross neglect of its duties and responsibilities to properly operate BNL under the contract.

58. USDOE entered into an "operating contract" with BSA in 1998 to operate BNL.

## The BNL "Operating Contractors'" Duties & Responsibilities
### for the Environment, Safety and Health at the Site

59. Pursuant to the "operating contract", the "operating contractor" for BNL was responsible to operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, performance, services and functions at the laboratory and on the

14

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 17 of 100 PageID #: 25

site.

60. The responsibilities of the BNL "operating contractor" included but were not limited to: (1) prevention, protection and conservation of the surrounding environment and environmental resources at the laboratory and on the site; (2) formulation, development, issuance, and implementation of safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protection of the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, risks, and effects presented by environmental pollution, toxic contamination, toxic substances, and dangerous, hazardous, and ultra-hazardous activities at the laboratory and on the site.

61. The responsibilities of the BNL "operating contractor" amounted to duties to use reasonable care to operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, performance, services and functions at the laboratory and on the site.

62. The responsibilities of the BNL "operating contractor" amounted to duties to use reasonable care to (1) prevent, protect and conserve the surrounding environment and environmental resources at the laboratory and on the site; (2) formulate, develop, issue, and implement

15

sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protect the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, risks, and effects presented by environmental pollution, toxic contamination, toxic substances, and dangerous, hazardous, and ultra-hazardous activities at the laboratory and on the site.

### "Science Over Safety": BNL's Legacy of Toxic Chemical & Radiological Contamination:

63. During the course of its existence since 1947, the BNL "operating contractor", AUI, engaged in research, work, operations, activities, performance, services and functions at the laboratory and on the site that involved the extensive use, handling, production, discharge, release and disposal of radioactive fuels, substances, materials, and isotopes known to be hazardous and ultra-hazardous to human health, safety and welfare.

64. During the course of its existence since 1947, the BNL "operating contractor", AUI, engaged in research, work, operations, activities, performance, services and functions at the laboratory and on the site that involved the extensive use, handling, production, discharge, release and disposal of toxic chemicals known to be hazardous and ultra-hazardous to human health, safety and welfare.

16

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 19 of 100 PageID #: 27

65. During the course of its existence since 1947, the BNL "operating contractor", AUI, negligently used, handled, produced, discharged, released and disposed of radioactive fuels, substances, materials, and isotopes and thereby caused, created and contributed to (1) severe and pervasive pollution and contamination of the surrounding environment and environmental resources at the laboratory and on the site; (2) gross violations of safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) gross non-compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) hazards, dangers, and risks to the health, safety and welfare of employees, contractors, visitors and the general public at the laboratory and on the site sufficient to cause, contribute to and substantially result in injury, illness and death.

66. Some of those radioactive fuels, substances, materials, and isotopes that were used or produced at BNL were released, discharged, discarded and disposed at the site in such a manner as to constitute dosages sufficient to be known human carcinogens.

67. During the course of its existence since 1947, the BNL "operating contractor", AUI, negligently used, handled, produced, discharged, released and disposed of toxic chemicals and thereby caused, created and contributed to (1) severe and pervasive pollution and contamination of the surrounding environment and environmental resources at the laboratory and on the site; (2) gross violations of safety protocols, rules, regulations, standards,

17

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 20 of 100 PageID #: 28

guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) gross non-compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) hazards, dangers, and risks to the health, safety and welfare of employees, contractors, visitors and the general public at the laboratory and on the site sufficient to cause, contribute to and substantially result in injury, illness and death.

68. Some of those toxic chemicals used or produced at BNL were and are known human carcinogens.

69. Some of those toxic chemicals used or produced at BNL were and are known to be highly toxic, poisonous and hazardous to human health, safety and welfare.

70. Some of those toxic chemicals used or produced at BNL were used, released, discharged, discarded and disposed at the site in such a manner as to constitute concentrations sufficient to be carcinogenic, toxic, poisonous, hazardous, injurious and disease etiologic to human health, safety and welfare.

71. It is well settled that, throughout its existence since 1947, BNL presented and still presents an environmental pollution and toxic contamination health hazard to the people who were and are the employees, contractors and visitors on the site and the people who are the neighbors

18

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 21 of 100 PageID #: 29

of the site.

72. In 1989, the U.S. Environmental Protection Agency (USEPA) declared BNL a Superfund Site due to the severe and pervasive environmental pollution and toxic contamination at the laboratory and on the site.

73. During the period 1989 – present, it was known by BNL's operating contractor that the severe and pervasive environmental pollution and toxic contamination on the site resulted from the unsafe practices related to the use, handling, production, discharge, release, discard and disposal of toxic chemicals, radiological fuels, byproducts, wastes and substances, and radioactive isotopes.

74. According to a former AUI BNL senior manager and physics department chairman who authored an article in a peer reviewed physics scientific journal, the "contamination events" were "mostly chemical" and, to a lesser degree, "radioactive".

75. The former AUI BNL senior manager and physics department chairman also stated in the article the following:

76. The "issue of safety was largely the responsibility of the contractor running the lab's operation".

77. "AUI was responsible for identifying issues that needed addressing".

19

78. "Most lab employees probably had little knowledge of the extent of the legacy environmental issues at BNL."

79. "Widespread 1992 investigation of suspected legacy contamination included a search through historical records and discussions with older employees to discover other unsuspected issues. The large site had changed its look over the years as army barracks were replaced with new buildings, so old records and memories of employees were crucial in trying to find other potential legacy problems. Some of those practices included disposal in an on-site landfill, an old sewage treatment plant that discharged into the headwaters of the Peconic River, leaks from underground pipes, and releases of cleaning agents into the ground. The cleanup of the contamination was to be concluded by 2006, although there were likely some unknowns yet to be addressed."

80. In 1997, there was "an internal BNL report by an ad-hoc committee, headed by Robert Bari, [that] evaluated BNL decision-making on environment, safety, and health (ESH) matters and recommended changes. They suggested that ESH budgets needed to be stabilized and that ESH matters needed to be raised in overall priority and include broader input to decisions on resources."

81. Despite the internal AUI BNL report in 1997 by the ad-hoc committee on "environment, safety, and health" issues, ESH continued to be neglected and was not properly addressed by AUI to sufficiently eliminate the hazards, dangers and risks of environmental pollution and

20

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 23 of 100 PageID #: 31

toxic contamination presented by the research, work, operations, activities, performance, services and functions at the laboratory and on the site.

82. The BNL "operating contractor", AUI, violated its duties to use reasonable care in the operation, control, management, supervision, direction, administration, overseeing and conduct of the research, work, operations, activities, performance, services and functions at the laboratory and on the site.

83. The BNL "operating contractor", AUI, violated its respective duties to use reasonable care to (1) prevent, protect and conserve the surrounding environment and environmental resources at the laboratory and on the site; (2) formulate, develop, issue, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protect the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, risks, and effects presented by environmental pollution, toxic contamination, toxic substances, and dangerous, hazardous, and ultra-hazardous activities at the laboratory and on the site during the period 1997 – present.

84. During the period 1947 – present, the BNL "operating contractor", AUI, engaged in research, work, operations, activities, performance, services and functions at the laboratory and on the

21

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 24 of 100 PageID #: 32

site that involved the extensive use, handling, production, exposure, discharge, release, discard, and disposal of certain toxic chemicals and substances that were and/or are known to present severe hazards, dangers and risks to human health, safety and welfare, and serious injury, illness and death, including known human carcinogens.

85. Among the many toxic chemicals and substances known to be hazardous and ultra-hazardous to human health, safety and welfare that were used at BNL by AUI in the course of its research, work, operations, activities, performance, services and functions at the laboratory and on the site was trichloroethylene (TCE).

86. Among the many toxic chemicals and substances known to be hazardous and ultra-hazardous to human health, safety and welfare that were used at BNL by AUI in the course of its research, work, operations, activities, performance, services and functions at the laboratory and on the site was tetrachloroethylene (PCE).

87. Among the many toxic chemicals and substances known to be hazardous and ultra-hazardous to human health, safety and welfare that were used at BNL by AUI in the course of its research, work, operations, activities, performance, services and functions at the laboratory and on the site were volatile organic compounds (VOC).

88. Among the many toxic chemicals and substances known to be hazardous and ultra-hazardous to human health, safety and welfare that were used at BNL by AUI in the course of its research, work, operations, activities, performance, services and functions at the laboratory

22

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 25 of 100 PageID #: 33

and on the site were toxic volatile organic compounds (TVOC).

89. Among the many toxic chemicals and substances known to be hazardous and ultra-hazardous to human health, safety and welfare that were used at BNL by AUI in the course of its research, work, operations, activities, performance, services and functions at the laboratory and on the site were toxic heavy metals such as cadmium, chromium, cobalt, copper, lead and other similar substances.

90. Among the many toxic chemicals and substances known to be hazardous and ultra-hazardous to human health, safety and welfare that were used at BNL by AUI in the course of its research, work, operations, activities, performance, services and functions at the laboratory and on the site was the toxic chemical benzene and other similar substances.

91. Despite knowledge of the hazards, dangers and risks to human health, safety and welfare, the BNL "operating contractor", AUI, continued to violate its duties to use TCE, PCE, toxic heavy metals, benzenes and other toxic chemicals and substances with reasonable care in the operation, control, management, supervision, direction, administration, overseeing and conduct of the research, work, operations, activities, performance, services and functions at the laboratory and on the site during the period that it was the operating contractor for the lab.

92. Despite knowledge of the hazards, dangers and risks to human health, safety and welfare, the BNL "operating contractor", AUI, continued to negligently breach, violate and fail to adhere

23

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 26 of 100 PageID #: 34

to its duties to use TCE, PCE, toxic heavy metals, benzenes and other toxic chemicals and substances with reasonable care in order to (1) prevent, protect and conserve the surrounding environment and environmental resources at the laboratory and on the site from contamination by these toxic chemicals and substances; (2) formulate, develop, issue, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare hazards from contamination by these toxic chemicals and substances; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and health, safety and welfare hazards; and (4) protect the health, safety and welfare of employees, contractors, visitors and the general public against the hazards, dangers, risks, and effects presented by environmental pollution, toxic contamination, toxic substances, and dangerous, hazardous, and ultra-hazardous activities at the laboratory and on the site.

93. By the 1990's, BNL employees, contractors and subcontractors were well acquainted with a saying that became the laboratory's unofficial motto: "Science over safety".

## BNL's VOC & TVOC Use, Contamination & Exposure Sources

94. VOCs and TVOCs were extensively used at BNL by AUI during the period 1947 – 1998, in pertinent part, as solvents, degreasers, cleaning agents and disinfecting agents despite their known toxicity to humans.

24

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 27 of 100 PageID #: 35

95. VOCs and TVOCs were extensively used at BNL by AUI during the period 1947 – 1998, in many different activities including, but not limited to, the following: machining; metalworking; metal fabricating; milling; supercomputer operations; computer network maintenance, repair and reconfiguration; electrical equipment maintenance and repair; telephone and telecommunications maintenance and repair; information technology equipment maintenance and repair; construction; electrical contracting; scientific facility construction; scientific facility maintenance and repair; laboratory maintenance; laboratory experiments; custodial services; and housekeeping services.

96. BNL's VOC and TVOC use, discharge, release, discard and disposal practices caused severe and pervasive pollution, contamination and exposure risks at the site.

### BNL's TCE Use, Contamination & Exposure Risks

97. AUI extensively used TCE at BNL during the period 1947 – 1998 in pertinent part, as a solvent, degreaser, cleaning agent and disinfecting agent despite its known toxicity to humans.

98. AUI extensively used TCE at BNL during the period 1947 – 1998 in many different activities including, but not limited to, the following: machining; metalworking; metal fabricating; milling; supercomputer operations; computer network maintenance, repair and reconfiguration; electrical equipment maintenance and repair; telephone and telecommunications maintenance and repair; information technology equipment maintenance and repair; construction; electrical contracting; scientific facility construction; scientific

25

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 28 of 100 PageID #: 36

facility maintenance and repair; laboratory maintenance; laboratory experiments; custodial services; and housekeeping services.

99. AUI extensively used TCE at BNL in the course of work, operations, services, research and other activities during the period 1947 – 1998 in Buildings 515, 479, 462, 490, 460, 463, 931, 422, 815, 555, 911, 830, 835, 734, 930, 480, 400, 902, 740, 326, 703, 817, 197, 510, 120, 901, 427, visitor housing accommodations and many other buildings, structures facilities, and locations.

100. AUI extensively used TCE at BNL during the period 1947 – 1998 in the Relativistic Heavy Ion Collider, Alternating Gradient Synchotron, National Synchotron Light Source II, Accelerator Test Facility, Tandem de Graaff Electrostatic Accelerator, Space Radiation Laboratory and computational science supercomputer research laboratories and other scientific facilities.

101. AUI extensively used TCE at BNL during the period 1947 – 1998 as work supplies and materiel given to computer operators, computer network technicians, information technology technicians, electronic technicians, telephone technicians, telecommunications technicians, machinists, metalworkers, scientific facility technicians, electricians, construction laborers, riggers, custodians and housekeepers for use in their customary, habitual and routine work activities, responsibilities and duties.

26

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 29 of 100 PageID #: 37

102. AUI extensively used TCE at BNL as work supplies and materiel dispensed to workers who were employees, contractors and/or subcontractors.

103. AUI extensively purchased, ordered, delivered, stored, dispensed and used TCE at BNL in aerosol, spray, liquid and bulk form.

104. AUI extensively purchased, ordered, delivered, stored, dispensed and used TCE at BNL in the forms of aerosol can/bottle, spray can/bottle, bottled liquid, 55 gallon drum/barrel and liquid bulk delivery for tank storage.

105. Among the uses of TCE at BNL by AUI employees, contractor and/or subcontractors were the following:

106. Computer operators and technicians at BNL were supplied TCE to use in aerosol can/bottle, spray can/bottle, and bottled liquid form as solvents, degreasers and cleaning solutions to clean micro-debris and particles off the head drives, tape drives and other components of supercomputers between computer tape spool changes. These workers performed this process on 96 separate occasions or more per day during an 8 hour shift. These technicians worked in Buildings 515 and other buildings, structures, facilities and locations containing supercomputers.

107. Computer network technicians, information technology technicians, electronic technicians, telephone technicians, and telecommunications technicians at BNL were

27

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 30 of 100 PageID #: 38

supplied TCE in aerosol can/bottle, spray can/bottle, and bottled liquid form as solvents, degreasers and cleaning solutions to clean circuit boards, transistors, silicon chips, wiring, wire connections, electrical and mechanical components, supercomputers, computers, and electrical, telephone, and telecommunications equipment. These workers performed this process hundreds of times per day during an 8 hour shift. These technicians worked in Buildings 515, 479, 462, 490, 902 and many other buildings, structures facilities, and locations throughout BNL.

108.    Electricians, construction laborers and other tradesmen at BNL were supplied TCE in aerosol can/bottle, spray can/bottle, and bottled liquid form as solvents, degreasers and cleaning solutions to clean electrical switchbox components, gear box components, piping, conduit, connections, solid state circuits, circuit boards, wiring, and adapters during construction work and activities, including construction of the RHIC during the ISABELLE Project at the Ring, Section Facility Stations, Injection, Ejection, Heavy Ion Transfer Tunnel, Building 902 and other locations. These workers performed this process hundreds of times per day during an 8 hour shift. The workers also used TCE in the RHIC tunnels. The workers also stood in groundwater that seeped into the tunnels during ongoing excavations.

109.    Machinists, metalworkers, millers, fabricators and machine shop workers at BNL were supplied TCE in liquid, drum, barrel and bulk form as solvents, degreasers and cleaning solutions to clean metal parts, components, apparatus, equipment, appliances, articles and objects before installation and operations. These workers performed this process hundreds of

28

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 31 of 100 PageID #: 39

times per day during an 8 hour shift. The workers worked in Buildings 479, 462 and many other buildings, structures, facilities, and locations throughout BNL.

110.    Scientific facility technicians at BNL were supplied TCE in aerosol can/bottle, spray can/bottle, bottled liquid, liquid, drum, barrel and bulk form as solvents, degreasers and cleaning solutions to clean portions of the Relativistic Heavy Ion Collider, Alternating Gradient Synchotron, National Synchotron Light Source II, Accelerator Test Facility, Tandem de Graaff Electrostatic Accelerator and other scientific facilities in between experiments. These workers performed this process hundreds of times per day during an 8 hour shift.

111.    Riggers, custodians and housekeepers were supplied TCE in aerosol can/bottle, spray can/bottle, bottled liquid, liquid, drum, barrel and bulk form as solvents, degreasers and cleaning solutions to clean and disinfect numerous locations throughout the BNL site including, but not limited to, Buildings 515, 479, 462, 490, 460, 463, 931, 422, 815, 555, 911, 830, 835, 734, 930, 480, 400, 902, 740, 326, 703, 817, 197, 510, 120, 901, 427, visitor housing accommodations and many other buildings, structures facilities, and locations throughout BNL.

112.    AUI advised, instructed, directed and/or ordered workers to discharge, release, discard and dispose of TCE after use in sink, basin and floor drains, sewers, septic sewer system, sewer pipes, cesspools, soils, trenches, shafts, holes, discharge basins and landfills.

29

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 32 of 100 PageID #: 40

113.    TCE was known to be toxic to humans in the 1950's.

114.    TCE was banned from use in food and pharmaceutical production throughout most developed nations in the world by the 1970's.

115.    TCE was considered a probable and/or suspected human carcinogen by the 1970's.

116.    In 1978, toxicology researchers at BNL published an article in a peer reviewed toxicology and pharmacology scientific journal that described experiments designed to measure the toxicity of TCE and TCE in combination with other volatile organic compounds and chemicals; the article discussed experiment results that suggested the toxicity of TCE existed whether the exposure was exclusive or as a compound in combination with other chemicals.

117.    The USEPA declared BNL a Superfund Site in 1989, in pertinent part, due to severe and pervasive environmental pollution and toxic contamination with TCE and other VOCs, in the buildings, structures, facilities, groundwater, soil, waste disposal system, sewer system, cesspools and surface waters throughout the site. USEPA divided BNL into "Operating Units" designated I – VII.

118.    According to federal documents, the toxicity of TCE to humans and the hazards, dangers and risks the chemical presented to human health, safety and welfare to humans was scientifically established to the extent that the USDOE banned the use of the toxic chemical

30

at its facilities in 1990.

119.   According to former AUI BNL employees, after USDOE issued bulletins and memoranda to all U.S. national laboratories in 1990 banning the use of TCE at the facilities, AUI managers instructed the employees to "stockpile" as much TCE as possible and amass the TCE "stockpile" through facilitating the purchase, order, delivery, distribution, storage and maintenance of TCE products in aerosol can/bottle, spray can/bottle, bottled liquid, drum/barrel and bulk form. AUI managers explained that TCE was an optimal choice for use as a solvent, degreaser, cleaning agent and disinfection agent throughout the BNL site.

120.   Despite the USDOE TCE use ban in 1990, AUI continued to use TCE at BNL in the foregoing described manner by employees, contractors and/or subcontractors during the period 1990 – 1998.

121.   AUI's stockpile of TCE products amassed during the 1990's was so massive that it continued to be used by BNL workers in the course of their employment duties long after the DOE terminated AUI as the "operating contractor" for BNL in 1998.

122.   BSA employees, including Mr. YUHAS, continued to use TCE products drawn off of the massive stockpile amassed by AUI until 2006 if not later.

123.   AUI continued to supply BNL employees, contractors and/or subcontractors, including RONALD YUHAS, with TCE in aerosol can/bottle, spray can/bottle, bottled liquid,

31

drum/barrel and bulk form to use in the course of their work activities, responsibilities and duties during the period 1990 – 1998.

124.    AUI continued to order and direct BNL employees, contractors and/or subcontractors, including RONALD YUHAS, to use TCE at BNL in aerosol can/bottle, spray can/bottle, bottled liquid, drum/barrel and bulk form in the course of their work activities, responsibilities and duties during the period 1990 – 1998.

125.    The vast majority of the TCE products used by AUI at BNL were (1) DOW CHEMICAL's "Triclene", "Tri-Clene", "Tri-Clean" and other similar TCE aerosol, liquid and liquid bulk products and (2) ZEP's "Aero-Solv II", and "Power-Solv II" and other similar TCE aerosol, liquid and liquid bulk products. DOW's "Triclene", "Tri-Clene", "Tri-Clean" and other similar TCE aerosol, liquid and liquid bulk products were used mostly before 1990; ZEP's "Aero-Solv II", and "Power-Solv II" and other similar TCE products were used mostly after 1990.

126.    AUI did not provide BNL employees, contractors and/or subcontractors, including RONALD YUHAS, using TCE with protective equipment and measures including respirator masks, barrier gloves, protective garments and adequate ventilation to prevent, avoid and/or limit hazardous occupational exposures in the course of their work activities, responsibilities and duties.

127.    AUI did not properly and adequately protect BNL employees, contractors and/or

32

Case 2:19-cv-05475-GRB-RML     Document 1-2     Filed 09/26/19     Page 35 of 100 PageID
#: 43

subcontractors, including RONALD YUHAS, using TCE from the hazards, dangers, and risks to human health, safety and welfare, including the risks of carcinogenicity, toxicity, injury and illness.

128.    AUI did not properly and adequately warn BNL employees, contractors and/or subcontractors, including RONALD YUHAS, using TCE about the hazards, dangers, and risks to human health, safety and welfare, including the risks of carcinogenicity, toxicity, injury and illness.

129.    AUI did not properly and adequately instruct, educate or inform BNL employees, contractors and/or subcontractors, including RONALD YUHAS, using TCE about the hazards, dangers, and risks to human health, safety and welfare, including the risks of carcinogenicity, toxicity, injury and illness.

130.    AUI did not properly and adequately provide to BNL employees, contractors and/or subcontractors, including RONALD YUHAS, instructions for the safe uses of TCE to prevent, avoid and/or limit unreasonable risks of harm.

131.    AUI did not properly and adequately provide for the safe discharge, release, discarding and disposal of TCE at BNL and consequently subjected employees, contractors, and/or subcontractors, including RONALD YUHAS, to increased hazards, dangers, and risks to human health, safety and welfare, including the risks of carcinogenicity, toxicity, injury and illness.

33

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 36 of 100 PageID #: 44

132.    AUI did not provide to BNL employees, contractors and/or subcontractors, including RONALD YUHAS, the manufacturers' warnings about TCE hazards, dangers, and risks to human health, safety and welfare, including the risks of carcinogenicity, toxicity, injury and illness.

133.    AUI did not provide to BNL employees, contractors and/or subcontractors, including RONALD YUHAS, the manufacturers' instructions about preventing, avoiding and/or limiting TCE hazards, dangers, and risks to human health, safety and welfare, including the risks of carcinogenicity, toxicity, injury and illness.

134.    The DOW CHEMICAL and ZEP TCE products purchased, ordered, delivered, distributed, stored, maintained, dispensed and supplied to workers by AUI at BNL did not have proper and adequate warnings about the hazards, dangers, and risks to human health, safety and welfare including the risks of carcinogenicity, toxicity, injury and illness.

135.    The DOW CHEMICAL and ZEP TCE products purchased, ordered, delivered, distributed, stored, maintained, dispensed and supplied to workers by AUI at BNL did not have proper and adequate instructions advising users to prevent, avoid and/or limit the hazards, dangers, and risks to human health, safety and welfare including the risks of carcinogenicity, toxicity, injury and illness.

34

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 37 of 100 PageID #: 45

## BNL's TCE, PCE, VOC, TVOC & Toxic Chemical
## Pollution & Contamination Levels

136.    BNL's TCE use, discharge, release, discard and disposal practices caused severe and pervasive pollution, contamination and exposure risks in the laboratory and on the site.

137.    In 1994, a BNL consulting engineers' report described a "TCE Spill Area" on Brookhaven Avenue directly in the middle of the campus in the most densely populated area containing most of the buildings, structures and facilities on the site. The "TCE Spill Area" was located in the EPA's Superfund Site "Operating Unit III" (OU III).

138.    The 1994 engineering report also described analysis of cesspool sludge sampling near Building 919 that found TCE contamination levels at 300,000 μg/kg. The analysis implied massive TCE pollution and contamination as a result of negligent disposal practices into drains emptying to the sewers, septic sewer system and cesspools with consequent leakage into soils, surface waters, groundwater and the underlying aquifer. The report warned that the "presence of high levels of …… TCE at this location represents a potential source of groundwater contamination".

139.    A 1996 USEPA report on BNL contamination contains tables showing elevated levels of TCE in the groundwater 4 times the above the federal and state standards for maximum contaminant level (MCL). The federal and state standards are 5 MCL; however, the report showed that the TCE contamination level in groundwater was 20 MCL.

140.    A USEPA report on BNL contamination, dated April 14, 2000, stated that

35

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 38 of 100 PageID #: 46

"[t]richloroethene (TCE) was detected in wells above the MCL of 5 ppb at levels ranging from 7 to 27 ppb, primarily in the area between Princeton Avenue and the South Boundary Road."

141. This USEPA report from the year 2000 also states,

"[t]he VOCs found in the Magothy aquifer above the drinking water standard off-site in the OU III groundwater plume were carbon tetrachloride at 7090 ppb, chloroform at 45 ppb, and trichlorothene (TCE) at 30 ppb. These data are from the 1998 and 1999 sampling of an off-site monitoring well located 275 to 285 feet below land surface within the Magothy Aquifer that was sampled as part of our going groundwater monitoring program. The depth of the monitoring well is 275 to 285 feet below land surface (approximately 187 to 197 feet below mean sea level)".

142. The 2000 USEPA report also identifies the "TCE Spill Area" as a location where TCE was directly discharged onto the ground in the 1950's.

143. This 2000 USEPA report contains a table that shows excessive TCE contamination levels were found in soils (0.7 mg/kg), subsurface soils (0.06 mg/kg), surface water (11 µg/L) and groundwater (5 µg/L).

144. This USEPA report also showed excessive PCE contamination levels:

"Tetrachloroethene (PCE) was found in the vicinity of Building 96 in the water-table zone and in the deep glacial zone near the site boundary. PCE in groundwater samples ranged from 10 to 15,000 ppb. The main source of the PCE is the area immediately south of Building 96, which had been used as a truck-wash station and drum-storage area. In the water-table zone, the PCE plume is approximately 1,600 feet long by 500 feet wide. In the mid-glacial it is about 4,400 feet long by 600 feet wide."

"The greatest potential for transport of contaminants at the OU HI site is via groundwater transport. Volatile organic compounds, including PCE, TCA, and carbon tetrachloride, have been detected in groundwater plumes indicating their

36

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 39 of 100 PageID #: 47

ongoing transport."

"An additional risk assessment was done for the future receptors, assuming exposure to the VOC groundwater plumes identified in OU III (TCA, PCE and carbon tetrachloride). The conservative assumption was made that in the future (30 years) houses would be built near the highest detected concentrations of these on-site plumes, and the residents would use the residential wells as the sole water supply for domestic uses. The risk to a future resident using groundwater at the highest concentration of carbon tetrachloride and PCE exceeds the acceptable risk range. Estimated risks to an adult from exposure to carbon tetrachloride and PCE in groundwater were $6 \times 10^{-4}$ and $5 \times 10^{-3}$ respectively. Estimated risks to a child from exposure to carbon tetrachloride and PCE in groundwater were $3 \times 10^{-4}$ and $2 \times 10^{-3}$. Under this highly unlikely scenario, the presence of TCA, PCE and carbon tetrachloride plumes in groundwater on-site could pose a potential health concern for a future resident."

145.    This USEPA report contains the same table that shows excessive PCE contamination levels were found in soils (1.4 mg/kg), subsurface soils (0.06 mg/kg), and groundwater (5 μg/L).

146.    Also in 2000, USEPA issued groundwater survey maps showing plumes of toxic chemical and radioactive isotope contamination underlying BNL's OU III, i.e., the location on the site with the highest daily population density and highest number of occupied buildings, structures and facilities (see, Exhibit 1, USEPA OU Map). The groundwater survey maps consisted of those depicting plumes for TVOCs (see, Exhibit 2, TVOC Groundwater Plume Map), Strontium – 90 (see, Exhibit 3, Strontium – 90 Groundwater Plume Map), Tritium (see, Exhibit 4, Tritium Groundwater Plume Map), and TVOCs – Strontium 90 – Tritium Combined (see, Exhibit 5, Combined Contaminant Groundwater Plume Map).

37

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 40 of 100 PageID #: 48

147.   BNL issued its own report entitled "Groundwater Protection Management Program Description", dated May 31, 2002, authored by Paquette, Bennett and Dorsch. The report showed that considerable TCE and PCE contamination were still present despite remediation actions at various locations within the site. In pertinent part, the report by Paquette, et al., states:

"Figure 7. Map of BNL CERCLA Areas of Concern/Operable Units

Operable Unit I: The OU I areas of concern deal with both chemical and radiologically contaminated soils and groundwater at the former Hazardous Waste Management Facility (HWMF),[6] and the Former Landfill and Current Landfill areas. *As a result of historical waste handling and disposal practices and accidental spills, soil and groundwater within the HWMF have been contaminated with VOCs and radionuclides*. Groundwater investigations have detected VOCs such as 1,1,1-trichloroethane (TCA), *trichloroethylene (TCE), tetrachloroethylene (PCE)*, 1,1-dichloroethane (DCA), and 1,1-dichloroethylene (DCE). Radionuclides such as tritium and strontium-90 have also been detected in the groundwater. Residual contaminants of concern found in the soils at the facility are cesium-137 and strontium-90

……

Operable Unit V: The areas of concern for OU V include: the Sewage Treatment Plant (STP) (AOC 4a through 4e); leaking sanitary lines (AOC 21); eastern tritium plume (AOC 23 East); and the Peconic River (AOC 30). The primary concern in this OU is the historical contaminant discharges to the BNL Sewage Treatment Plant (STP), which has been in continuous operation since 1947. Remedial investigation have identified contaminated soils near the STP filter beds, contaminated sediments within the Peconic River and an off-site TCE plume (ITC/G&M, 1998a; ITC/G&M, 1998b).

Air Sparge/Soil vapor Extraction Remediation System (AOC 5): In 1977, a 23,000 to 25,000 gallon mixture of Number 6 fuel oil and mineral spirits was released from a ruptured pipe used to transfer the contents from a UST to aboveground storage tanks at the Central Steam Facility (CSF). *The primary chemical contaminants in the OU IV plume near the 1977 spill site are TCA, PCE, DCE, TCE, toluene, ethylbenzene, and xylenes. In addition, several small spills of Number 6 fuel oil from the CSF fuel unloading area were documented between 1988 and 1993; it also is suspected that small volumes of solvents, such as PCE, were released to the ground near the CSF*.

Air sparge with soil vapor extraction was selected as the remedy for soil and groundwater contaminated with VOCs underlying OU IV. The AS/SVE system

38

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 41 of 100 PageID #: 49

has been operating since November 1997. Performance goals for soil cleanup were achieved in 1998 while performance goals were met in August 2000 for groundwater. Subsequently, a formal petition for shutdown was submitted to EPA and NYSDEC and approval for shutdown was received in January 2001. The system was shutdown on January 10, 2001. *However, following the shutdown, groundwater results were received for one well located near the spill site showed a rebound in several VOC parameters* (indicative of fuel oil). Because of this, pulsing of the AS/SVE system was initiated on a weekly basis in February 2001."

(Emphasis added.)

148.    BNL issued a "Final Five Year Report for Brookhaven National Laboratory Superfund Site" in July 2006. In pertinent part, the report stated the following about TCE contamination at the site:

"VOC contaminated groundwater including trichloroethene (TCE) [is] on and off of BNL property"

"Groundwater: *The primary contaminants in the groundwater on and off of the BNL site include <u>trichloroethene (TCE)</u> and tritium. Tritium has not been detected above the drinking water standards, and <u>TCE concentrations are slightly above the standards</u>*."

(Emphasis added.)

149.    The foregoing U.S. government and BNL reports, records and documents demonstrate that TCE, PCE, VOCs, TVOCs and other toxic chemical and radiological contaminants existed at the site that encompassed the period of time that RONALD YUHAS worked there.

150.    BNL employees, contractors and/or subcontractors, including RONALD YUHAS, were exposed to TCE, PCE, VOCs, TVOCs, toxic chemicals and radiological contaminants through inhalation, trans-dermal contact, ingestion and vapor intrusion routes.

151.    The TCE and PCE exposures to BNL employees, contractors and/or subcontractors,

39

Case 2:19-cv-05475-GRB-RML     Document 1-2     Filed 09/26/19     Page 42 of 100 PageID #: 50

including RONALD YUHAS, were well beyond the maximum contamination levels and substantially in excess of the parts per million and parts per billion standards set by applicable scientifically established and accepted exposure limits (e.g., SEL, REL and PEL).

## BNL Site Exposure Matrices

152.    The U.S. Department of Labor (USDOL), USDOE and USEPA compiled and analyzed BNL pollution and contamination data and operating contractor records to publish "Site Exposure Matrices".

153.    The USDOL BNL "Site Exposure Matrices" were established to identify human health risk exposure sources at BNL buildings, structures, facilities, and locations; identify exposure sources by BNL occupations and job categories; and identify BNL exposure sources by toxic chemical, toxic substance and radioactive isotopes.

154.    Examples include, but are not limited to, the following:

155.    The BNL Site Exposure Matrix for Building 515 states that "Trichloroethylene" (TCE) was a toxic chemical used in this location. Among the TCE products used at this location were DOW's Triclene, Tri-Clene and Tri-Clean and ZEP's Power-Solv II. ZEP's Power-Solv, Aero-Solv and Aero-Solv II was also used in this location too.

156.    The BNL Site Exposure Matrix for Building 479 states that "Trichloroethylene" (TCE) was a toxic chemical used in this location. Among the TCE products used at this location

40

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 43 of 100 PageID #: 51

were DOW's Triclene, Tri-Clene and Tri-Clean and ZEP's Power-Solv II. Tetrachloroethylene (PCE) was also used at this location too.

157. The BNL Site Exposure Matrix for Building 462 states that "Trichloroethylene" (TCE) was a toxic chemical used in this location. Among the TCE products used at this location were DOW's Triclene and Tri-Clene and ZEP's Power-Solv II. Tetrachloroethylene (PCE) was also used at this location too.

158. The BNL Site Exposure Matrix for "Trichloroethylene" states that it was used for information technologies activities, applied mathematics activities, circuit board washing, electrical, mechanical and powerline maintenance, physics and medical research, "laboratory activities", electrical renovation, metal degreasing, machining, parts fabricating, sheet metal fabricating, metalworking and numerous other activities. This SEM also shows that TCE was used at Buildings 515, 479, 462 and many other buildings, structures, facilities and locations and in scientific facilities including the Relativistic Heavy Ion Collider (RHIC), Alternating Gradient Synchotron (AGS) and National Synchotron Light Source II (NSLS II).

### RONALD YUHAS's Experiences as a BNL Worker

159. RONALD YUHAS, now 77 years old, worked at Brookhaven National Laboratory as a computer operator, information technology department shift supervisor, and telecommunications technician at various locations throughout the site.

160. Mr. YUHAS was employed by AUI at BNL during the period 1964 – 1998.

41

INDEX NO. 616363/2019
RECEIVED NYSCEF: 09/11/2019

161.    Mr. YUHAS was employed by BSA at BNL during the period 1998 – 2007.

162.    Mr. YUHAS extensively used TCE for his work activities, duties and responsibilities at many BNL buildings, structures, facilities and locations throughout the site.

163.    YUHAS used mostly ZEP's Power-Solv II and Aero-Solv II and DOW's Triclene though he used other TCE products by these manufacturers.

164.    YUHAS used the DOW and ZEP TCE cleaning solvents in many places at BNL; however, he only used TCE at BNL.

165.    YUHAS used TCE cleaning solvents on a daily basis in the course of his work duties pursuant to the directions of AUI managers.

166.    YUHAS used TCE cleaning solvents hundreds of times per day in the course of his employment duties throughout his 35 years of employment at BNL.

167.    YUHAS was directed, instructed and told to use TCE cleaning solvents (ZEP's Power-Solv II and Aero-Solv II and DOW's Triclene) by BNL managers and employees in the course of his work activities, duties and responsibilities.

42

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 45 of 100 PageID
#: 53

168.    YUHAS was supplied and dispensed TCE cleaning solvents (ZEP's Power-Solv II and Aero-Solv II and DOW's Triclene) by BNL managers and employees.

169.    YUHAS used TCE cleaning solvents in aerosol spray form dispensed out of cans and bottles hundreds of times per day pursuant to the directions and instructions of BNL managers.

170.    YUHAS was aware that other BNL workers were using the same TCE cleaning solvents.

171.    YUHAS was aware that the use of TCE cleaning solvents by BNL workers was "heavy" and pervasive.

172.    YUHAS and other BNL workers used TCE cleaning solvents in aerosol spray form in buildings, structures, facilities and locations that had poor or no ventilation.

173.    YUHAS was never advised by BNL managers that TCE could be carcinogenic or toxic.

174.    YUHAS left work each day at BNL with the odor of TCE in his nostrils and on his clothing and the taste of TCE in his mouth.

175.    YUHAS was aware that BNL workers frequently commented that the motto of the laboratory was "Science over safety".

43

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 46 of 100 PageID #: 54

176.    YUHAS and other BNL workers used TCE cleaning solvents in aerosol spray form in buildings, structures, facilities and locations that were situated directly over areas with TCE, PCE, VOC, TVOC, toxic heavy metals, benzenes, toxic chemical and radiological contaminant groundwater plumes.

177.    YUHAS and other BNL workers used TCE cleaning solvents in aerosol spray form in buildings, structures, facilities and locations that were situated directly over areas with TCE, PCE, VOC, TVOC, toxic heavy metals, benzenes, toxic chemical and radiological soil contaminations.

178.    YUHAS was exposed to hazardous, dangerous and unsafe levels of TCE exposure delivered through the routes of inhalation, trans-dermal contact, ingestion and vapor intrusion in the ambient indoor air.

179.    AUI did not provide protective measures to YUHAS prevent, avoid and/or limit exposures to the hazards, dangers and risks to human health, safety and welfare of TCE cleaning solvents.

180.    AUI did not provide YUHAS with such protective equipment and measures as respirator masks, barrier gloves, protective garments and adequate ventilation to prevent, avoid and/or limit hazardous TCE exposures.

181.    AUI did not properly and adequately protect YUHAS from the hazards, dangers, and

44

risks to human health, safety and welfare resulting from the use of TCE cleaning solvents.

182.    AUI did not properly and adequately warn YUHAS about the hazards, dangers, and risks to human health, safety and welfare resulting from the use of TCE cleaning solvents.

183.    AUI did not properly and adequately instruct, educate or inform YUHAS about the hazards, dangers, and risks to human health, safety and welfare resulting from the use of TCE cleaning solvents.

184.    AUI did not properly and adequately provide to YUHAS instructions for the safe uses of TCE cleaning solvents.

185.    AUI did not provide to YUHAS the manufacturers' warnings about TCE hazards, dangers, and risks to human health, safety and welfare.

186.    AUI did not provide to YUHAS the manufacturers' instructions about preventing, avoiding and/or limiting TCE hazards, dangers, and risks to human health, safety and welfare, including the risks of carcinogenicity, toxicity, injury and illness.

187.    AUI did not provide to YUHAS the manufacturers' instructions about safe uses of TCE cleaning solvents.

188.    AUI did not properly and adequately provide for the safe discharge, release, discarding

45

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 48 of 100 PageID #: 56

and disposal of TCE at BNL and consequently subjected YUHAS to increased hazards, dangers, and risks to human health, safety and welfare, including the risks of carcinogenicity, toxicity, injury and illness through legacy contamination.

189.    DOW and ZEP did not properly and adequately warn YUHAS about the hazards, dangers, and risks to human health, safety and welfare presented by their TCE products including the risks of carcinogenicity, toxicity, injury and illness.

190.    DOW and ZEP did not properly and adequately instruct, educate and inform YUHAS about the hazards, dangers, and risks to human health, safety and welfare presented by their TCE products including the risks of carcinogenicity, toxicity, injury and illness.

191.    DOW and ZEP did not properly and adequately instruct YUHAS about the safe uses of their TCE products.

192.    AUI fraudulently concealed from YUHAS that BNL was dangerously contaminated and polluted with TCE – and PCE, VOC, TVOC, toxic heavy metals and many other toxic substances – in the ambient indoor air, groundwater, soil and drinking water supply presenting serious risks of harm, injury, illness and death to people on the site.

193.    AUI fraudulently concealed from YUHAS and other workers that the TCE contamination and pollution at BNL presented risks to their health from exposure through inhalational, transdermal, ingestional, and vapor intrusive routes.

46

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 49 of 100 PageID #: 57

194. In 2008, YUHAS was diagnosed with renal cystic disease.

195. Subsequently, YUHAS was diagnosed with chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries.

196. YUHAS' renal cystic disease, chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries are the result of toxic TCE exposure at BNL.

197. YUHAS' exposure to other toxic substances at BNL contributed to his renal cystic disease, chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries.

### TCE Toxicity & Carcinogenicity:
### The Pathogenic Mechanisms of TCE Exposure for
### Mutagenic, Genotoxic & Non-Genotoxic Injuries

198. TCE is classified and accepted as a "known human carcinogen".

199. TCE is also a toxic substance hazardous to human health in other ways.

200. TCE was declared a known human carcinogen according to the U.S. EPA, NIH/NIEHS National Toxicity Program, U.S. HHS Agency for Toxic Substances and Disease Registry, U.N. World Health Organization, and WHO International Association for Research on Cancer (IARC) during the years 2011 – 2016.

47

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 50 of 100 PageID #: 58

201. TCE can cause cancers and other diseases in humans through mutagenic, genotoxic and non-genotoxic mechanisms.

202. In order of magnitude, pathogenic TCE exposure routes are inhalation, trans-dermal contact, ingestion, and vapor intrusion into enclosed structures.

203. TCE creates toxic liver metabolites that can have mutagenic, genotoxic and non-genotoxic diseases involving various organs. Mutagenic essentially means that a substance has mutational effects on genes. Genotoxic essentially means that a substance can cause damage to the DNA in cells. Non-genotoxic essentially means that a substance can cause cellular structure damage. The liver metabolites are expressed into bile and blood.

204. The biochemical pathways by which TCE is metabolized include, but are not limited to, the following two well-known and scientifically established mechanisms:

205. The cytochrome P450 pathway, which is oxidative, impacts the liver, and appears to produce relatively stable metabolites, if not overloaded.

206. The glutathione-S-transferase (GST) pathway, which is reductive, and produces some reactive and mutagenic products, is nephrotoxic and can cause or contribute to kidney cancers and organ damage.

48

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 51 of 100 PageID #: 59

207.    Both of these enzymes are highly expressed in liver cells but also expressed widely in other organ tissues as well including kidney. They are what are known as conjugation molecules.

208.    The enzyme GST-A1-1 is produced in the glutathione-S-transferase (GST) pathway.

209.    There are many variants (encoded by different genes) that act in detoxification pathways, the chemical transformations that enable cells (and therefore organs) to export and excrete potentially dangerous compounds. Kidney cells are set up to export and excrete these dangerous compounds; therefore, this organ can be damaged when the pathway produces a reactive intermediate.

210.    The liver is the location where the focus of the action starts in this process.

211.    The GST-A1-1 enzyme (GST) binds two small molecules, known as conjugation molecules or conjugates, one is glutathione and the other is TCE. The TCE is known as the "target" molecule in this case. The enzymes are able to bind a range of targets. When both molecules are bound to the protein, it catalyzes the linkage of the two to produce a glutathione-TCE conjugate or conjugation molecule. This conjugation molecule, known as DCVG, is pathogenic and dangerous to humans.

212.    TCE conjugation and its mutagenic potential in the kidney and urinary tract occurs as follows:

49

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 52 of 100 PageID
#: 60

213.    TCE metabolism by the GSH conjugation pathway is initiated by the action of GSH S-transferase (GST) enzymes.

214.    The first step in this pathway is an SN2 nucleophilic displacement reaction of TCE with GSH, releasing Cl- ion and S-(1,2- dichlorovinyl) glutathione (DCVG) as products.

215.    Although this initial GSH conjugation step can occur in many tissues, it occurs primarily in the liver owing to first-pass metabolism and the high content of GSTs. In the human and rat liver, the various GST isoforms can account for as much as 5% of total cytosolic protein. Subsequent metabolism through the GSH conjugation pathway occurs primarily in the kidneys.

216.    As noted above, although quantitatively the liver is the primary site of GSH conjugation of TCE in the body, the liver is very efficient at excreting GSH conjugates into either bile or plasma.

217.    Subsequently, through enterohepatic and renal-hepatic circulation, generally either the cysteine conjugate DCVC or the mercapturate NAcDCVC is delivered to the kidneys for further metabolism or excretion.

50

218. Additionally, in situ GSH conjugation of TCE can occur within the kidneys themselves, primarily the proximal tubules establishing an intra-organ cycle of GSH conjugate transport and metabolism.

219. TCE metabolites formed through the GSH conjugation pathway DCVG, whether formed within the kidneys or in the liver, is processed predominantly in the kidneys by a sequence of two hydrolytic enzymes on the proximal tubular brush-border membrane, γ-glutamyltransferase (GGT) and cysteinylglycine dipeptidase (DP), to yield the corresponding cysteine conjugate, S-(1,2-dichlorovinyl)-L-cysteine (DCVC) [93].

220. DCVC was first discovered more than 50 years ago in soybean meal as a by-product of TCE extraction. It was identified as the agent causing nephrotoxicity and aplastic anemia in cows, but only nephrotoxicity in most other species. Lock and colleagues verified that DCVC indeed produced both nephrotoxicity and aplastic anemia in cattle, but further showed that none of the other haloalkenyl cysteine conjugates studied caused aplastic anemia in addition to the characteristic nephrotoxicity.

221. DCVC can be viewed as a major branch point in this metabolic pathway, as it can have three possible fates.

222. First, DCVC can be N-acetylated by the microsomal cysteine conjugate N-acetyltransferase (NAT) to form the mercapturate N-acetyl-S-(1,2- dichlorovinyl)-L-cysteine (NAcDCVC).

51

223. Besides excretion into urine, NAcDCVC can be deacetylated within the renal proximal tubular cell by aminoacylase III to re-form DCVC.

224. Additionally, mercapturates of several nephrotoxic haloalkenes, including NAcDCVC, are substrates for CYP3A enzymes to yield sulfoxides. Thus, although NAcDCVC is considered a stable end-product of TCE metabolism and is recovered in urine, it can undergo additional metabolic transformations that serve to reactivate it. These additional fates of the putative end-product of the GSH conjugation pathway highlight both the complexity of TCE metabolism by this pathway and the potential difficulties in using urinary NAcDCVC as a surrogate measurement for overall flux through the GSH conjugation pathway.

225. Second, DCVC can be a substrate for cysteine conjugate β-lyase (CCBL) activities to generate the reactive S-(1,2-dichlorovinyl)thiol (DCVT). DCVT spontaneously rearranges to form either chlorothioketene (CTK) or chlorothionoacetyl chloride (CTAC). Both of these species are chemically unstable and reactive and are believed to be responsible for formation of covalent adducts derived from DCVC with nucleic acids, proteins, and phospholipids.

226. CCBL activity has been detected not only in the kidneys, but in liver, urinary tract, lymph nodes and other organs and tissues as well. Only renal, as opposed to extra-renal, CCBL activity is toxicologically important for kidney toxicity because of the tissue localization of plasma membrane transporters and several of the enzymes of the GSH conjugation pathway that determine the distribution of TCE metabolites. The overall β-lyase reaction mechanism

52

is cleavage of a C-S bond to yield a reactive, thioacylating species. The reaction mechanism can occur by either direct β-elimination or transamination with a suitable α-keto acid co-substrate to yield either the thiolate or a propionic acid derivative, respectively. The latter is chemically unstable and rearranges to release the thiolate. According to Cooper and colleagues, many distinct mammalian enzymes are known to be capable of catalyzing the CCBL reaction. Some of the CCBL enzymes catalyze both β-elimination and transamination reactions, whereas others can only catalyze the former reaction.

227. Third, DCVC can be a substrate for the flavin-containing monooxygenase (FMO), yielding a reactive S-(1,2-dichlorovinyl)-L-cysteine sulfoxide (DCVCS). The FMOs, like the CYPs, represent a multigene family of enzymes. Both enzyme systems also share several other characteristics, including localization in the endoplasmic reticulum, requirement for NADPH as a reductant, and overall catalysis of a mixed-function oxidation reaction.

228. Differences do exist, however, that make some of the functions of the FMOs rather distinctive. For example, although there are more than 50 individual functional CYP enzymes from > 40 gene families in humans, there are only 5 FMO genes in mammals.

229. FMOs catalyze oxidation of sulfur-, selenium-, and nitrogen-containing chemicals. Although FMOs and some CYPs share substrates and catalyze the same overall reactions, FMOs have some distinctive substrates, including cysteine S-conjugates of various haloalkenes and haloalkanes.

53

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 56 of 100 PageID #: 64

230.   Because of the reactive nature of the various intermediates from this pathway, only NAcDCVC has been recovered in urine of both experimental animals and humans exposed to TCE or DCVC. Of the two possible bioactivation pathways for DCVC, the CCBL and FMO reactions, the former has received the most attention and probably accounts for most of the bioactivation activity for DCVC.

231.   TCE is classified and accepted as a "known human carcinogen" and a toxic substance hazardous to human health by agencies of the U.S. government, International Association of Research on Cancer and a broad consensus of knowledgeable experts in the fields of science and medicine.

232.   TCE used and misused by AUI at BNL was improperly allowed to pervasively pollute and contaminate the site and present hazards, dangers, and risks to human health, safety and welfare to those people at, on or in the vicinity of the site, including RONALD YUHAS.

233.   YUHAS's exposure to TCE at BNL by inhalation, trans-dermal contact, ingestion and vapor intrusive routes caused, contributed to and were substantial factors resulting in his renal cystic disease, chronic kidney disease, COPD, Crohn's disease, and consequent injuries, illnesses and diseases through the foregoing described mutagenic, genotoxic and non-genotoxic pathogenic mechanisms.

54

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 57 of 100 PageID #: 65

## PCE Toxicity & Carcinogenicity

234.    Similar to its close cousin trichloroethylene (TCE), tetrachloroethylene (PCE)[8], is a synthetic small molecule that was widely used throughout the twentieth century as a cleaning solvent and degreasing agent.

235.    PCE is classified as a known environmental pollutant and health hazard, and there are recommendations and regulations placed upon it by the USEPA, OSHA, and NIOSH.

236.    PCE has a molecular weight of 165.83 g/mol and a vapor pressure of 18.47 mmHg at room temperature (compared with 22.4 mmHg for water and 74 mmHg for TCE), and is considered a volatile organic compound (VOC) that readily vaporizes in air.

237.    PCE is not by itself cytotoxic or otherwise immediately harmful to the body; however its metabolized derivatives are. Once in the body, PCE is either metabolized via cytochrome P450 or undergoes conjugation to glutathione thereby leading to the formation of a wide number of toxic metabolites, including but not limited to NAcTCVC, NAcTCVCS, TCVC, and TCOH. While all of these compounds have been indicated in both *in vitro* and *in vivo* experiments to be renal toxins, TCVC accounts for the majority of the renal toxicity.

238.    PCE enters the body via inhalation, ingestion, trans-dermal, and vapor intrusion from the air, water, and soil. These modes of contact will also lead to PCE absorption into the body

---

[8] Tetrachloroethylene is also known as perchloroethylene, PEC or PERC.

55

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 58 of 100 PageID #: 66

since the chemical is a small molecule that can diffuse through the lungs, skin and digestive tract.

239.     The most common route of entry for PCE is through inhalation due to the volatility of the compound but also how slowly PCE breaks down in air (half-life estimated to be between 70-250 days).

240.     Although PCE is a VOC, its relatively low vapor pressure means that a decent quantity will remain in the liquid phase when exposed to air but it is sufficiently volatile so as to cause vaporization sufficient for toxicity through inhalation, ingestion and vapor intrusion routes.

241.     Although PCE is generally thought of as non-soluble, PCE will dissolve in water and migrate into groundwater and aquifers.

242.     Vapor intrusion also allows for PCE to migrate upwards once buried in the ground; therefore, common routes of entry given a contaminated water source are numerous and include inhalation, ingestion and vapor intrusion routes.

243.     PCE can diffuse through PVC (polyvinylchloride) water pipes to contaminate water supplies.

56

Case 2:19-cv-05475-GRB-RML     Document 1-2     Filed 09/26/19     Page 59 of 100 PageID #: 67

244. PCE has a degradation half-life of about 1-2 years in groundwater; however, known sites of PCE contamination have continued to exist more than 15-20 years after contamination sources ceased to exist.

245. Whether exposure is through inhalation, ingestion, trans-dermal or vapor intrusion, PCE will enter the bloodstream and be metabolized by cells into the previously mentioned toxic byproducts.

246. PCE will generally be readily exhaled or excreted; however, the metabolic pathway from PCE to toxic metabolites proceeds quickly, and despite the rapid loss of PCE in the body, the production of toxins will have already occurred prior to total exhalation or excretion.

247. Chronic PCE exposure results in the sequestering of the chemical in fat cells for prolonged or persistent exposure because the chemical is lipid-soluble[9].

248. Chronic PCE exposure has been linked to cancers and dysfunctions in the bladder, liver, kidneys, urinary tract, blood, lymph nodes, esophagus, cervix, central nervous system and other organs and tissues.

249. PCE has been associated with neurological deterioration in humans; however, this correlation was established in studies on workers who had routing exposures to PCE vapor at concentrations over 100 ppm.

---

[9] WHO Guidelines for Indoor Air Quality 2010.

57

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 60 of 100 PageID #: 68

250.    The hazards, dangers and risks to human health, safety and welfare presented by PCE exposure are known and described in various peer reviewed scientific journals.

251.    PCE is hepatotoxic, nephrotoxic, and carcinogenic particularly to the bladder[10], kidneys, urinary tract, liver, blood, lymph nodes, esophagus, cervix and central nervous system.

252.    Chronic PCE exposure over the EPA and OSHA-mandated regulations has been shown to lead to these cases.

253.    Aside from the well established causal impact on PCE exposure and bladder cancer, well documented studies show PCE exposure is causally connected to cancers and/or injury to the kidneys, urinary tract, liver, blood, lymph nodes, esophagus, cervix and central nervous system.

254.    The IARC concluded in 1995 that the scientific evidence shows PCE exposure is causally connected to esophageal and cervical cancer.

255.    The most recent retrospective cohort studies reflect the PCE exposure induced risks of liver, kidney, esophageal and cervical cancer and show sufficient scientific evidence demonstrating a causal connection.

256.    Aside from TCE, PCE used and misused by AUI at BNL was also improperly allowed to pervasively pollute and contaminate the site and present hazards, dangers, and risks to human

---

[10] Lash, L. and Parker, J. *Hepatic and renal toxicities associated with perchloroethylene.* Pharmacological Reviews, 2001, 53:177–208

58

health, safety and welfare to those people at, on or in the vicinity of the site, including RONALD YUHAS.

257.    YUHAS's exposure to PCE at BNL by inhalation, trans-dermal contact, ingestion and vapor intrusive routes contributed to and was a substantial factor resulting in his renal cystic disease, chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries through the foregoing described mutagenic, genotoxic and non-genotoxic pathogenic mechanisms.

## VOC, TVOC & Other Chemical Substance Toxicity & Carcinogenicity

258.    Aside from TCE and PCE, other VOCs, TVOCs, toxic heavy metals, benzenes and other toxic chemicals used and misused by AUI at BNL were also improperly allowed to pervasively pollute and contaminate the site and present hazards, dangers, and risks to human health, safety and welfare to those people at, on or in the vicinity of the site, including RONALD YUHAS.

259.    YUHAS's exposure to VOCs, TVOCs, toxic heavy metals, benzenes and other toxic chemicals at BNL by inhalation, trans-dermal contact, ingestion and vapor intrusive routes contributed to and was a substantial factor resulting in his renal cystic disease, chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries.

59

## BNL's Federal Law, DOE Policy and
## Operating Contract Violations

### Federal Law Violations

260.  USEPA and New York State Department of Environmental Conservation (NYSDEC)

performed an environmental audit and inspection of BNL during 1997 – 1998.

261.  NYS AG Vacco's report, dated October 16, 1997, entitled "Brookhaven National

Laboratory: At The Crossroads", described some of the results of the USEPA and NYSDEC

audit and inspection:

> "The involved agencies each stressed that the contamination posing the most serious threat was caused by *chemical wastes*, not tritium or other radioactive contaminants. These *chemical wastes* include 1.1.1,-trichloroethane ("TCA"), EDB, carbon tetrachloride, and *trichloroethylene ("TCE")*. …… The Review found that TCA and *TCE*, *commonly used in many Laboratory facilities as equipment degreasers, were often discharged to sinks and drains or poured directly onto the ground*."

(Emphasis added.)

262.  The USEPA's inspections at BNL resulted in violations of the Safe Drinking Water Act

(SDWA), Clean Air Act (CAA), Resource Conservation and Recovery Act (RCRA) and

Toxic Substance Control Act (TSCA) issued against AUI on March 9, 1998.

263.  On March 23, 1998, USEPA stated that it cited AUI "for *lapses in compliance with*

*federal rules aimed at protecting public health and the environment at BNL,*" including but

not limited to violations of the Safe Drinking Water Act, Clean Air Act, Resource

Conservation and Recovery Act and Toxic Substances Control Act. (Emphasis added.)

60

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 63 of 100 PageID #: 71

264.    During its tenure as the "operating contractor" at BNL, AUI violated in numerous ways the Safe Drinking Water Act (SDWA), Clean Air Act (CAA), Resource Conservation and Recovery Act (RCRA) and Toxic Substance Control Act (TSCA) and regulations issued pursuant to those statutes.

**Operating Contract Violations**

265.    AUI violated those provisions of the "operating contract" that required them to protect workers, the public and the environment.

266.    The "operating contract" made the safety and health of workers and the public and the protection and restoration of the environment the fundamental responsibilities of the "operating contractor".

267.    The "operating contract" required that the "operating contractor" ensure all work activities are performed in a manner that prevented fatalities, minimized injuries and illnesses, minimized exposures to hazardous substances and materials, prevented environmental releases of dangerous substances and prevented property loss.

268.    The "operating contract" required that the "operating contractor" ensure the identification, mitigation, or elimination of workplace hazards.

61

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 64 of 100 PageID #: 72

269. The "operating contract" required the "operating contractor" to ensure that subcontractor employees are trained and qualified on job tasks, hazards, DOE and BNL Departmental safety policies, expectations and requirements.

270. The "operating contract" required the "operating contractor" to ensure that it performed all activities in compliance with applicable health, safety, and environmental laws, orders, regulations, national consensus standards, governing agreements and permits executed with regulatory and oversight government organizations.

271. The "operating contract" required the "operating contractor" to ensure that safety encompasses environment, safety and health, including pollution prevention and waste minimization.

272. The "operating contract" defined "employees" to include subcontractor employees.

273. The "operating contract" required the "operating contractor" to ensure that in performing work under the contract, the contractor shall perform work safely, in a manner that ensures adequate protection for employees, the public, and the environment, and shall be accountable for the safe performance of work.

274. The "operating contract" required the "operating contractor" to ensure that it exercised a degree of care commensurate with the work and the associated hazards.

62

275. The "operating contract" required the "operating contractor" to ensure that management was responsible for the protection of employees, the public, and the environment.

276. The "operating contract" required the "operating contractor" to ensure that personnel possess the experience, knowledge, skills, and abilities that are necessary to discharge their responsibilities.

277. The "operating contract" required the "operating contractor" to ensure that protecting employees, the public, and the environment is a priority whenever activities are planned and performed.

278. The "operating contract" required the "operating contractor" to ensure that before work is performed, the associated hazards are evaluated and an agreed-upon set of ES&H standards and requirements are established which, if properly implemented, provide adequate assurance that employees, the public, and the environment are protected from adverse consequences.

279. The "operating contract" required the "operating contractor" to ensure that administrative and engineering controls to prevent and mitigate hazards are proper and adequate to the work being performed and associated hazards and the work and controls are designed to "reduce or eliminate the hazards and to prevent accidents and unplanned releases and exposures.

63

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 66 of 100 PageID #: 74

**The Plaintiff's Awareness of the Specific Cause of Injury**
**Secondary to BNL Toxic Chemical Exposures**

280.   YUHAS was unaware that TCE exposure at BNL was possibly related to his renal cystic disease, chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries until on or about October 25, 2018.

281.   On November 3, 2016, the National Toxicology Program at the National Institute of Environmental Health Sciences of the National Institutes of Health (NTP/NIEHS/NIH) announced that trichloroethylene was to be classified as a "known human carcinogen" in the U.S. Department of Health & Human Service's (USHHS) 14th Report on Carcinogens.

282.   On or about October 25, 2018, YUHAS was shown the BNL Site Exposure Matrices for Buildings 515, 479, 462 and Trichloroethylene.

283.   It was not until October 25, 2018, that YUHAS could identify the specific cleaning solvent products that he used at BNL with TCE as the active ingredient and identify the TCE product manufacturers (i.e., ZEP's Power-Solv II and Aero-Solv II, and DOW's Triclene, Tri-Clene and Tri-Clean) and identify the alleged specific cause of his renal cystic disease, chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries.

284.   Based on the review of the foregoing materials, YUHAS became aware of the specific TCE products and the parties responsible for the TCE exposures that caused, contributed to or were substantial factors resulting in his renal cystic disease, chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries on or about October 25, 2018.

64

285. YUHAS was advised that he had renal cystic disease in 2008 and subsequently became aware that he had chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries through 2018; those conditions are considered to be the result of a continuum of toxicity secondary to TCE exposure.

286. The technical, scientific or medical knowledge and information sufficient to ascertain the specific cause of YUHAS's injuries (i.e., renal cystic disease, chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries) sufficient to file a lawsuit had not been discovered, identified or determined prior to on or about October 25, 2018.

287. While YUHAS discovered that he had renal cystic disease in 2008; the U.S. government had not yet officially recognized TCE as a known human carcinogen etiologic for renal cancer and toxic renal injury by including TCE in the 14th Report on Carcinogens.

288. It was not until November 3, 2016, that the U.S. Department of Health & Human Services NTP/NIEHS/NIH published the 14th Report on Carcinogens officially classifying TCE as a known human carcinogen and identifying TCE as a cause of kidney cancer and toxic renal injury.

289. While YUHAS was aware that he used TCE cleaning solvents, he was not aware that TCE caused or contributed to his kidney diseases and other illnesses or injuries until on or about October 25, 2018.

65

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 68 of 100 PageID #: 76

290. Moreover, YUHAS was unable to identify the specific TCE products that he used at BNL or identify the specific manufacturers of those TCE products until on or about October 25, 2018, when he was given the Site Exposure Matrices.

291. It was not until October 25, 2018, that YUHAS recognized that he used ZEP's Power-Solv II and Aero-Solv II, and DOW's Triclene, Tri-Clene and Tri-Clean, realized that those products contained TCE and that direct inhalation and trans-dermal contact was the primary route of his TCE exposure.

292. Thus, it was not until October 25, 2018, that YUHAS could specifically identify "the cause of his injury" or the parties responsible for those injuries.

293. The Site Exposure Matrices enabled YUHAS to obtain the technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury on October 25, 2018.

294. Prior to October 25, 2018, YUHAS could not possibly determine and establish that his renal cystic disease, chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries were caused by his use of ZEP's Power-Solv II and Aero-Solv II, and DOW's Triclene, Tri-Clene and Tri-Clean while working at BNL during the period 1964 - 2007.

66

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 69 of 100 PageID #: 77

295. The earliest that YUHAS could have been generally aware and prove that TCE cleaning solvents used at BNL was the cause of his renal cystic disease, chronic kidney disease, COPD, Crohn's disease and other illnesses and injuries was on October 25, 2018.

296. No BNL worker could possibly know or prove that TCE exposures generally could be a viable explanation for their kidney cancer or disease until the publication of the 14th Report on Carcinogens on November 3, 2016.

297. Subsequent to October 25, 2018, YUHAS was shown numerous reports, records and documents revealing the pervasive environmental pollution and contamination of BNL by TCE, PCE, VOCs, TVOCs, toxic heavy metals, benzenes and other toxic chemicals in the buildings, structures, facilities, soils, surface water, groundwater, and drinking water supplies.

298. It was not until sometime after October 25, 2018, that YUHAS could identify other toxic exposures resulting from BNL's pervasive environmental pollution and contamination by TCE, PCE, VOCs, TVOCs, toxic heavy metals, benzenes and other toxic chemicals.

299. Based on the review of the foregoing materials, YUHAS became aware of other toxic exposures resulting from BNL's environmental pollution and toxic contamination that contributed to or were substantial factors resulting in his injuries, illnesses, harm, losses and damages sometime after October 25, 2018.

67

# FIRST CAUSE OF ACTION: NEGLIGENCE

300.   Plaintiff RONALD YUHAS repeats, re-alleges and reiterates each and every allegation contained in paragraphs numbered "1" through "299" of the Complaint and incorporates them by reference as if fully repeated, re-alleged and reiterated in this paragraph.

301.   Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to all employees, contractors, subcontractors, visitors, occupants, future occupants and other people at and within the vicinity of the site, including RONALD YUHAS, to use reasonable care to safely operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, performance, services and functions at the laboratory and on the site.

302.   Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to all employees, contractors, subcontractors, visitors, occupants, future occupants and other people at and within the vicinity of the site, including RONALD YUHAS, to use reasonable care to (1) prevent, protect and conserve the surrounding environment and environmental resources at the laboratory and site from contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzene, other toxic chemicals and radioactive isotopes; (2) formulate, develop, issue, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and health, safety and welfare from contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzenes, other toxic chemicals and radioactive isotopes; (3) ensure compliance with safety protocols, rules,

68

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 71 of 100 PageID #: 79

regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and hazards, dangers and risks to human health, safety and welfare from contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzenes, other toxic chemicals and radioactive isotopes; and (4) protect the health, safety and welfare of employees, contractors, visitors, occupants, future occupants and the general public at or in the vicinity of the site against the hazards, dangers, and risks presented by environmental pollution, toxic contamination, toxic substances, dangerous, hazardous, and ultra-hazardous activities and contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzenes, other toxic chemicals and radioactive isotopes at the laboratory and on the site.

303.    Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to use reasonable care to prevent environmental pollution and toxic contamination with TCE so as to ensure the future safety of the site and protect the health, safety and welfare of people at, on or in the vicinity of the site in the future.

304.    Pursuant to its contractual responsibilities as the BNL "operating contractor", AUI owed duties to all future employees, contractors, subcontractors, visitors, occupants and other people at and within the vicinity of the site, including RONALD YUHAS, to use reasonable care to operate, control, direct, manage, supervise, monitor, oversee, conduct, and regulate the laboratory's activities, research, business, performance, services, functions, facilities, equipment, supplies, assets, and property in a safe manner to protect the health, safety and welfare of those persons at, on and in the vicinity of the site in the future.

69

305.    AUI owed duties to all future BNL employees, contractors, subcontractors, workers, visitors, occupants and other person at or in the vicinity of the site, including RONALD YUHAS, to use reasonable care in properly and adequately providing for the safe use, handling, storage, discharge, release, discarding and disposal of TCE.

306.    DOW and ZEP owed a duty of reasonable care to purchasers and users of its TCE products, including RONALD YUHAS, to manufacture, market, distribute, sell and place into the stream of commerce products that could be used in a reasonably safe manner.

307.    DOW and ZEP owed a duty of reasonable care to purchasers and users of its TCE products, including RONALD YUHAS, to manufacture, market, distribute, sell and place into the stream of commerce products that did not subject users to an unreasonable risk of harm.

308.    DOW and ZEP owed a duty of reasonable care to purchasers and users of its TCE products, including RONALD YUHAS, to properly and adequately provide warnings to users about the inherent hazards, dangers and/or risks of these products to human health, safety and welfare.

309.    DOW and ZEP owed a duty of reasonable care to purchasers and users of its TCE products, including RONALD YUHAS, to properly and adequately instruct, educate and inform users about the inherent hazards, dangers and/or risks of these products to human

70

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 73 of 100 PageID #: 81

health, safety and welfare.

310.    DOW and ZEP owed a duty of reasonable care to purchasers and users of its TCE products, including RONALD YUHAS, to provide instructions for the proper and safe use of these products.

311.    AUI owed duties to all future BNL employees, contractors, subcontractors, workers, visitors, occupants and other persons at or in the vicinity of the site, including RONALD YUHAS, to use reasonable care to prevent environmental pollution and toxic contamination with PCE, VOC, TVOC, toxic heavy metals, benzene, and other toxic chemicals at the site.

312.    AUI owed duties to all future BNL employees, contractors, subcontractors, workers, visitors, occupants and other person at or in the vicinity of the site, including RONALD YUHAS, to use reasonable care in properly and adequately providing for the safe use, handling, storage, discharge, release, discarding and disposal of PCE, VOC, TVOC, toxic heavy metals, benzene, and other toxic chemicals at the site.

313.    AUI breached and violated its duties to safely operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, performance, services and functions at the laboratory and on the site to the detriment of RONALD YUHAS and many other future BNL workers.

314.    AUI breached and violated its duties to (1) prevent, protect and conserve the surrounding

71

environment and environmental resources at the laboratory and site from contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzene, other toxic chemicals and radioactive isotopes; (2) formulate, develop, issue, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and hazards, dangers and risks to health, safety and welfare from contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzene, other toxic chemicals and radioactive isotopes; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and hazards, dangers and risks to human health, safety and welfare from contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzenes, other toxic chemicals and radioactive isotopes; and (4) protect the health, safety and welfare of employees, contractors, visitors, occupants, future occupants and the general public at or in the vicinity of the site against the hazards, dangers, and risks presented by environmental pollution, toxic contamination, toxic substances, dangerous, hazardous, and ultra-hazardous activities and contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzenes, other toxic chemicals and radioactive isotopes at the laboratory and on the site to the detriment of RONALD YUHAS and many other future BNL workers.

315.    AUI breached and violated its duties to properly and adequately provide for the safe use, handling, storage, discharge, release, discarding and disposal of TCE to the detriment of RONALD YUHAS and many other future BNL workers.

72

316.    DOW and ZEP breached and violated their duties to manufacture, market, distribute, sell and place into the stream of commerce TCE products that could be used by RONALD YUHAS and many other BNL workers, in a reasonably safe manner to the detriment of RONALD YUHAS and many other BNL workers.

317.    DOW and ZEP breached and violated their duties to manufacture, market, distribute, sell and place into the stream of commerce TCE products that did not subject users, including RONALD YUHAS and many other BNL workers, to an unreasonable risk of harm to the detriment of RONALD YUHAS and many other BNL workers.

318.    DOW and ZEP breached and violated their duties to properly and adequately provide warnings to users, including RONALD YUHAS and many other BNL workers, about the inherent hazards, dangers and/or risks of their TCE products to human health, safety and welfare.

319.    DOW and ZEP breached and violated their duties to properly and adequately instruct, educate and inform users, including RONALD YUHAS and many other BNL workers, about the inherent hazards, dangers and/or risks of their TCE products to human health, safety and welfare.

320.    DOW and ZEP breached and violated their duties to properly and adequately provide instructions for the proper and safe use of their TCE products.

73

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 76 of 100 PageID #: 84

321. AUI breached and violated their duties to properly and adequately provide for the safe use, handling, storage, discharge, release, discarding and disposal of PCE, VOC, TVOC, toxic heavy metals, benzene, and other toxic chemicals to the detriment of RONALD YUHAS and many other future BNL workers.

322. AUI negligently failed to safely operate, control, manage, supervise, direct, administer, oversee and conduct all research, work, operations, activities, performance, services and functions at the laboratory and on the site to the detriment of RONALD YUHAS and many other BNL workers.

323. AUI negligently failed to (1) prevent, protect and conserve the surrounding environment and environmental resources at the laboratory and site from contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzene, other toxic chemicals and radioactive isotopes; (2) formulate, develop, issue, and implement sufficient safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination, and hazards, dangers and risks to health, safety and welfare from contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzene, other toxic chemicals and radioactive isotopes; (3) ensure compliance with safety protocols, rules, regulations, standards, guidelines and measures to protect the site and those people on or near the site against environmental pollution, toxic contamination and hazards, dangers and risks to human health, safety and welfare from contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzenes, other toxic chemicals and radioactive isotopes; and (4) protect the health, safety and welfare of employees, contractors,

74

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 77 of 100 PageID #: 85

visitors, occupants, future occupants and the general public at or in the vicinity of the site against the hazards, dangers, and risks presented by environmental pollution, toxic contamination, toxic substances, dangerous, hazardous, and ultra-hazardous activities and contamination with TCE, PCE, VOC, TVOC, toxic heavy metals, benzenes, other toxic chemicals and radioactive isotopes at the laboratory and on the site to the detriment of RONALD YUHAS and many other BNL workers.

324. AUI negligently failed to properly and adequately provide for the safe use, handling, storage, discharge, release, discarding and disposal of TCE to the detriment of RONALD YUHAS and many other future BNL workers.

325. DOW and ZEP negligently failed to manufacture, market, distribute, sell and place into the stream of commerce TCE products that could be used by RONALD YUHAS and many other BNL workers, in a reasonably safe manner to the detriment of RONALD YUHAS and many other BNL workers.

326. DOW and ZEP negligently failed to manufacture, market, distribute, sell and place into the stream of commerce TCE products that did not subject users, including RONALD YUHAS and many other BNL workers, to an unreasonable risk of harm to the detriment of RONALD YUHAS and many other BNL workers.

327. DOW and ZEP negligently failed to properly and adequately provide warnings to users, including RONALD YUHAS and many other BNL workers, about the inherent hazards,

75

dangers and/or risks of their TCE products to human health, safety and welfare.

328. DOW and ZEP negligently failed to properly and adequately instruct, educate and inform users, including RONALD YUHAS and many other BNL workers, about the inherent hazards, dangers and/or risks of their TCE products to human health, safety and welfare.

329. DOW and ZEP negligently failed to properly and adequately provide instructions for the proper and safe use of their TCE products.

330. AUI negligently failed to properly and adequately provide for the safe use, handling, storage, discharge, release, discarding and disposal of PCE, VOC, TVOC, toxic heavy metals, benzene, and other toxic chemicals to the detriment of RONALD YUHAS and many other future BNL workers.

331. The foregoing negligence of AUI, DOW and ZEP caused, contributed to and were substantial factors resulting RONALD YUHAS's kidney diseases, toxicity, injury, illness, harm, losses and damages.

332. The foregoing negligence of AUI, DOW and ZEP caused, contributed to and were substantial factors resulting in RONALD YUHAS' renal cystic disease, chronic kidney disease, diminished kidney function, renal impairment, COPD, Crohn's disease, and other illnesses and injuries, conscious pain and suffering, grave injuries, loss of function and use of an organ, consequential medical sequelae, scarring, disfigurement, recurrence risks,

76

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 79 of 100 PageID #: 87

worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

333.   The injuries, illnesses, harm, losses and damages sustained by RONALD YUHAS were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of AUI, DOW and ZEP and were in no way caused and/or contributed to by Mr. YUHAS.

334.   As a result of the negligence of AUI, DOW and ZEP, RONALD YUHAS has been damaged in an amount in excess of the jurisdiction of all lower courts in the State of New York and is entitled to compensatory and punitive damages that exceed the jurisdictional limits of all lower courts.

335.   By reason of the foregoing, plaintiff RONALD YUHAS is entitled to compensatory and punitive damages from defendants AUI, DOW and ZEP for his non-economic and economic injuries that exceed the jurisdictional limits of all lower courts.

336.   By reason of the foregoing, plaintiff RONALD YUHAS demands judgment against defendants in the amount of $25,000,000.00 for compensatory and punitive damages.

77

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 80 of 100 PageID #: 88

## SECOND CAUSE OF ACTION:
## STRICT PRODUCTS LIABILITY FOR
## DANGEROUSLY DEFECTIVE PRODUCTS

337. Plaintiff RONALD YUHAS repeats, re-alleges and reiterates each and every allegation contained in paragraphs numbered "1" through "336" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

338. AUI, DOW and ZEP distributed and supplied the vast majority of the TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form) used by BNL workers including RONALD YUHAS.

339. AUI, DOW and ZEP owed a duty to users of its TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form), including RONALD YUHAS, to manufacture, market, distribute, sell and/or place into the stream of commerce products that were reasonably safe.

340. AUI, DOW and ZEP owed a duty to users of its TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form), including RONALD YUHAS, to manufacture, market, distribute, sell and/or place into the stream of commerce products that did not subject users to an unreasonable risk of harm.

341. AUI, DOW and ZEP breached and violated their duties to RONALD YUHAS and other

78

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 81 of 100 PageID #: 89

BNL workers to manufacture, market, distribute, sell and/or place into the stream of commerce products that were reasonably safe.

342.    AUI, DOW and ZEP breached and violated their duties to RONALD YUHAS and other BNL workers to manufacture, market, distribute, sell and/or place into the stream of commerce products that did not subject users to an unreasonable risk of harm.

343.    AUI, DOW and ZEP manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form) that were not reasonably safe to the detriment of RONALD YUHAS and other BNL workers.

344.    AUI, DOW and ZEP manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form) that subjected users to an unreasonable risk of harm to the detriment of RONALD YUHAS and other BNL workers.

345.    The TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form) distributed and supplied by AUI, DOW and ZEP were human carcinogens, nephrotoxic, hepatotoxic,

79

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 82 of 100 PageID #: 90

toxic to humans health in many ways, and ultra-hazardous, hazardous and dangerous to human health, safety and welfare.

346. RONALD YUHAS and many other workers at BNL sustained TCE exposures that were carcinogenic, nephrotoxic, hepatotoxic, toxic, and/or ultra-hazardous, hazardous and/or dangerous to their health, safety and welfare.

347. The foregoing hazards, dangers and risks to the human health, safety and welfare of RONALD YUHAS and many other workers from the TCE products manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce by AUI, DOW and ZEP at BNL were inherent, latent and not open or obvious.

348. The foregoing hazards, dangers and risks to human health, safety and welfare of RONALD YUHAS and many other workers from the use and/or misuse of the TCE products manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce by AUI, DOW and ZEP at BNL was foreseeable.

349. AUI, DOW and ZEP are strictly liable for the manufacture, market, distribute, sell and/or place into the stream of commerce TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form) that were dangerously defective, not reasonably safe and presented an unreasonable risk of harm.

80

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 83 of 100 PageID #: 91

350.    The foregoing conduct of AUI, DOW and ZEP caused, contributed to and were substantial factors resulting RONALD YUHAS's cancer, toxicity, injury, illness, harm, losses and damages.

351.    The foregoing conduct of AUI, DOW and ZEP caused, contributed to and were substantial factors resulting in RONALD YUHAS' renal cystic disease, chronic kidney disease, diminished kidney function, renal impairment, COPD, Crohn's disease, and other illnesses and injuries, conscious pain and suffering, grave injuries, loss of function and use of an organ, consequential medical sequelae, scarring, disfigurement, recurrence risks, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

352.    The injuries, illnesses, harm, losses and damages sustained by RONALD YUHAS were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of AUI, DOW and ZEP and were in no way caused and/or contributed to by Mr. YUHAS.

353.    As a result of the foregoing conduct of AUI, DOW and ZEP, RONALD YUHAS has been damaged in an amount in excess of the jurisdiction of all lower courts in the State of New York and is entitled to compensatory and punitive damages that exceed the jurisdictional limits of all lower courts.

81

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 84 of 100 PageID #: 92

354.    By reason of the foregoing, plaintiff RONALD YUHAS is entitled to compensatory and punitive damages from defendants AUI, DOW and ZEP for his non-economic and economic injuries that exceed the jurisdictional limits of all lower courts.

355.    By reason of the foregoing, plaintiff RONALD YUHAS demands judgment against defendants in the amount of $25,000,000.00 for compensatory and punitive damages.

### THIRD CAUSE OF ACTION: STRICT PRODUCTS LIABILITY FOR FAILURE TO PROVIDE ADEQUATE WARNINGS & USE INSTRUCTIONS

356.    Plaintiff RONALD YUHAS repeats, re-alleges and reiterates each and every allegation contained in paragraphs numbered "1" through "355" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

357.    AUI, DOW and ZEP owed a duty to users of its TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form), including RONALD YUHAS, to properly and adequately provide warnings to users about the inherent hazards, dangers and/or risks of these products to human health, safety and welfare.

358.    AUI, DOW and ZEP owed a duty to users of its TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form), including RONALD YUHAS, to properly and adequately instruct, educate and inform users about the inherent hazards, dangers and/or risks of these

82

products to human health, safety and welfare.

359.    AUI, DOW and ZEP owed a duty to users of its TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form), including RONALD YUHAS, to provide instructions for the proper and safe use of these products.

360.    AUI, DOW and ZEP owed a duty to users of its TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form), including RONALD YUHAS, to properly and adequately provide instructions for the safe discharge, release, discard and disposal of these products.

361.    AUI, DOW and ZEP breached and violated their duties to RONALD YUHAS and other BNL workers to properly and adequately provide warnings to users about the inherent hazards, dangers and/or risks of these products to human health, safety and welfare.

362.    AUI, DOW and ZEP breached and violated their duties to RONALD YUHAS and other BNL workers to AUI, DOW and ZEP breached and violated their duties to RONALD YUHAS and other BNL workers to properly and adequately instruct, educate and inform users about the inherent hazards, dangers and/or risks of these products to human health, safety and welfare.

363.    AUI, DOW and ZEP breached and violated their duties to RONALD YUHAS and other

83

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 86 of 100 PageID #: 94

BNL workers to provide instructions for the proper and safe use of these products

364.    AUI, DOW and ZEP breached and violated their duties to RONALD YUHAS and other BNL workers to properly and adequately provide instructions for the safe discharge, release, discard and disposal of these products.

365.    AUI, DOW and ZEP manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form) that did not properly and adequately provide warnings to users about the inherent hazards, dangers and/or risks of these products to human health, safety and welfare to the detriment of RONALD YUHAS and other BNL workers.

366.    AUI, DOW and ZEP manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form) that did not properly and adequately instruct, educate and inform users about the inherent hazards, dangers and/or risks of these products to human health, safety and welfare to the detriment of RONALD YUHAS and other BNL workers.

367.    AUI, DOW and ZEP manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk

84

form) that did not provide instructions for the proper and safe use of these products

368.  AUI, DOW and ZEP manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form) that did not properly and adequately provide instructions for the safe discharge, release, discard and disposal of these products to the detriment of RONALD YUHAS and other BNL workers.

369.  The TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form) distributed and supplied by AUI, DOW and ZEP were human carcinogens, nephrotoxic, hepatotoxic, toxic to human health in many ways, and ultra-hazardous, hazardous and dangerous to human health, safety and welfare.

370.  RONALD YUHAS and many other workers at BNL sustained TCE exposures that were carcinogenic, nephrotoxic, hepatotoxic, toxic, and/or ultra-hazardous, hazardous and/or dangerous to their health, safety and welfare.

371.  The foregoing hazards, dangers and risks to the human health, safety and welfare of RONALD YUHAS and many other workers from the TCE products manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce by AUI, DOW and ZEP at BNL were inherent, latent and not open or obvious.

85

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 88 of 100 PageID #: 96

372. The foregoing hazards, dangers and risks to human health, safety and welfare of RONALD YUHAS and many other workers from the use and/or misuse of the TCE products manufactured, marketed, distributed, sold, supplied and/or placed into the stream of commerce by AUI, DOW and ZEP at BNL was foreseeable.

373. AUI, DOW and ZEP are strictly liable for the manufacture, market, distribute, sell and/or place into the stream of commerce TCE products (ZEP's Power-Solv II and Aero-Solv II, DOW's Triclene, Tri-Clene and Tri-Clean and similar TCE products in aerosol, liquid and liquid bulk form) without the foregoing proper and adequate warnings and instructions about the hazards, dangers and risks to human health, safety and welfare presented by these dangerously defective and inherently ultra-hazardous, hazardous and dangerous nature of these products.

374. The foregoing conduct of AUI, DOW and ZEP caused, contributed to and were substantial factors resulting RONALD YUHAS' toxicity, injury, illness, harm, losses and damages.

375. The foregoing conduct of AUI, DOW and ZEP caused, contributed to and were substantial factors resulting in RONALD YUHAS' renal cystic disease, chronic kidney disease, diminished kidney function, renal impairment, COPD, Crohn's disease, and other illnesses and injuries, conscious pain and suffering, grave injuries, loss of function and use of an organ, consequential medical sequelae, scarring, disfigurement, recurrence risks,

86

worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

376.    The injuries, illnesses, harm, losses and damages sustained by RONALD YUHAS were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of AUI, DOW and ZEP and were in no way caused and/or contributed to by Mr. YUHAS.

377.    As a result of the foregoing conduct of AUI, DOW and ZEP, RONALD YUHAS has been damaged in an amount in excess of the jurisdiction of all lower courts in the State of New York and is entitled to compensatory and punitive damages that exceed the jurisdictional limits of all lower courts.

378.    By reason of the foregoing, plaintiff RONALD YUHAS is entitled to compensatory and punitive damages from defendants AUI, DOW and ZEP for his non-economic and economic injuries that exceed the jurisdictional limits of all lower courts.

379.    By reason of the foregoing, plaintiff RONALD YUHAS demands judgment against defendants in the amount of $25,000,000.00 for compensatory and punitive damages.

87

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 90 of 100 PageID #: 98

## FOURTH CAUSE OF ACTION:
## STRICT LIABILITY FOR
## ABNORMALLY DANGEROUS ACTIVITIES

380. Plaintiff RONALD YUHAS repeats, re-alleges and reiterates each and every allegation contained in paragraphs numbered "1" through "379" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

381. AUI engaged in BNL operational and disposal practices with TCE, PCE, VOC, TVOC, toxic heavy metals, and other toxic chemicals and substances and/or other ultra-hazardous toxins that were negligent, reckless, and/or intentional and constituted an ultra-hazardous or abnormally dangerous activity for which they are strictly liable.

382. AUI negligently used, misused, handled, stored, discharged, released, discarded and disposed of TCE, PCE, VOC, TVOC, toxic heavy metals, and other toxic chemicals and substances and/or other ultra-hazardous toxins at BNL that were carcinogenic and/or ultra-hazardous, hazardous and dangerous to human health, safety and welfare.

383. The foregoing ultra-hazardous or abnormally dangerous activity and conduct of AUI resulted in the pervasive legacy environmental pollution and toxic contamination of BNL's buildings, structures, facilities, soils, surface waters, groundwater, drinking water supplies, land, ambient indoor air and site.

384. The foregoing ultra-hazardous or abnormally dangerous activity and conduct of AUI caused, created and resulted in the foreseeable risks of personal injury, illness, harm and/or

88

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 91 of 100 PageID #: 99

death to future BNL employees, contractors, subcontractors, visitors and other people at, on or in the vicinity of the site, including RONALD YUHAS and many other BNL workers.

385.    The foregoing ultra-hazardous and abnormally dangerous activities and conduct of AUI at BNL caused and created a high degree of risk to human health, safety and welfare.

386. The foregoing ultra-hazardous and abnormally dangerous activities and conduct of AUI at BNL caused and created high risks of harm that could not otherwise be eliminated without closure of the laboratory.

387. The ultra-hazardous and abnormally dangerous activities by AUI at BNL were not a matter of common usage.

388. The foregoing conduct of AUI at BNL in a densely populated location presented such a high degree of hazards, dangers and risks to human health, safety and welfare that such risks outweighed its value to the community.

389. The foregoing ultra-hazardous and abnormally dangerous activities and conduct of AUI at BNL were inappropriate to the densely populated location.

390.    AUI allowed and/or caused these ultra-hazardous and abnormally dangerous activities to exist at BNL during the period 1947 – 2006 if not later encompassing the period of time that RONALD YUHAS worked there.

89

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 92 of 100 PageID #: 100

391.  The hazards, dangers and risks to RONALD YUHAS and many other BNL workers presented by these ultra-hazardous and abnormally dangerous activities outweighed any value associated with the same.

392.  AUI is strictly liable to RONALD YUHAS for the injuries, illnesses, harm and losses caused by these ultra-hazardous and abnormally dangerous activities at BNL.

393.  The foregoing conduct of AUI caused, contributed to and were substantial factors resulting RONALD YUHAS' toxicity, injury, illness, harm, losses and damages.

394.  The foregoing conduct of AUI caused, contributed to and were substantial factors resulting in RONALD YUHAS' renal cystic disease, chronic kidney disease, diminished kidney function, renal impairment, COPD, Crohn's disease, and other illnesses and injuries, conscious pain and suffering, grave injuries, loss of function and use of an organ, consequential medical sequelae, scarring, disfigurement, recurrence risks, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

395.  The injuries, illnesses, harm, losses and damages sustained by RONALD YUHAS were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of AUI and were in no way caused and/or contributed to by Mr. YUHAS.

90

396.    As a result of the foregoing conduct of AUI, RONALD YUHAS has been damaged in an amount in excess of the jurisdiction of all lower courts in the State of New York and is entitled to compensatory and punitive damages that exceed the jurisdictional limits of all lower courts.

397.    By reason of the foregoing, plaintiff RONALD YUHAS is entitled to compensatory and punitive damages from defendant AUI for his non-economic and economic injuries that exceed the jurisdictional limits of all lower courts.

398.    By reason of the foregoing, plaintiff RONALD YUHAS demands judgment against defendants in the amount of $25,000,000.00 for compensatory and punitive damages.

### FIFTH CAUSE OF ACTION: GROSS NEGLIGENCE

399.    Plaintiff RONALD YUHAS repeats, re-alleges and reiterates each and every allegation contained in paragraphs numbered "1" through "398" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

400.    The foregoing conduct of AUI pertaining to BNL operational and disposal practices for TCE, PCE, VOC, TVOC, toxic heavy metals, and other toxic chemicals and substances and/or other ultra-hazardous toxins was grossly negligent, reckless, and/or intentional.

401.    The foregoing conduct of AUI was undertaken in reckless disregard of the health, safety and welfare of RONALD YUHAS and many other future BNL workers.

91

Case 2:19-cv-05475-GRB-RML     Document 1-2     Filed 09/26/19     Page 94 of 100 PageID #: 102

402.   The foregoing conduct of AUI was undertaken with gross indifference to the health, safety and welfare of RONALD YUHAS and many other future BNL workers.

403.   The foregoing conduct of AUI was undertaken with the knowledge, awareness and/or reason to know that it would present an unreasonable risk of injury, illness, harm, loss and/or death to RONALD YUHAS and many other future BNL workers.

404.   The foregoing conduct of AUI knowingly, willfully and intentionally created an unreasonable risk of physical harm to RONALD YUHAS and many other future BNL workers.

405.   The foregoing conduct of AUI resulted in the pervasive legacy environmental pollution and toxic contamination of BNL's buildings, structures, facilities, soils, surface waters, groundwater, drinking water supplies, land, ambient indoor air and site.

406.   The foregoing grossly negligent conduct of AUI caused, created and resulted in the foreseeable risks of personal injury, illness, harm and/or death to future BNL employees, contractors, subcontractors, visitors and other people at, on or in the vicinity of the site, including RONALD YUHAS and many other BNL workers.

407.   The foregoing conduct of AUI caused, contributed to and were substantial factors resulting RONALD YUHAS' toxicity, injury, illness, harm, losses and damages.

92

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 95 of 100 PageID
#: 103

408.    The foregoing conduct of AUI caused, contributed to and were substantial factors resulting in RONALD YUHAS' renal cystic disease, chronic kidney disease, diminished kidney function, renal impairment, COPD, Crohn's disease, and other illnesses and injuries, conscious pain and suffering, grave injuries, loss of function and use of an organ, consequential medical sequelae, scarring, disfigurement, recurrence risks, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

409.    The injuries, illnesses, harm, losses and damages sustained by RONALD YUHAS were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of AUI and were in no way caused and/or contributed to by Mr. YUHAS.

410.    As a result of the foregoing, RONALD YUHAS has been damaged in an amount in excess of the jurisdiction of all lower courts in the State of New York and is entitled to compensatory and punitive damages that exceed the jurisdictional limits of all lower courts.

411.    By reason of the foregoing, plaintiff RONALD YUHAS is entitled to compensatory and punitive damages from defendants AUI for his non-economic and economic injuries that exceed the jurisdictional limits of all lower courts.

412.    By reason of the foregoing, plaintiff RONALD YUHAS demands judgment against defendants in the amount of $25,000,000.00 for compensatory and punitive damages.

93

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 96 of 100 PageID #: 104

## SIXTH CAUSE OF ACTION:
## FRAUDULENT CONCEALMENT

413.    Plaintiff RONALD YUHAS repeats, re-alleges and reiterates each and every allegation contained in paragraphs numbered "1" through "412" of the Complaint as if fully repeated, re-alleged and reiterated in this paragraph.

414.    AUI fraudulently concealed the hazards, dangers, and risks of TCE use, contamination and exposure to human health, safety and welfare, including the risks of carcinogenicity, toxicity, injury and illness, from BNL employees, contractors and/or subcontractors, including RONALD YUHAS, during the period 1947 – 2006 if not later.

415.    AUI's fraudulent concealment of TCE health risks was motivated by the "operating contractor's" goal of ensuring the renewal of the lucrative "operating contract" with USDOE, maintaining a sufficient local workforce to support the scientific research, work, operations, activities, performance, services and functions at the laboratory and on the site, and implementing a "science over safety" attitude and mentality at the BNL.

416.    AUI fraudulently concealed the hazards, dangers, and risks of toxic chemical use, contamination and exposure to human health, safety and welfare, including the risks of carcinogenicity, toxicity, injury and illness, from BNL employees, contractors and/or subcontractors during the period 1947 – 2006 if not later.

417.    AUI fraudulently concealed the hazards, dangers, and risks of radiological contamination

94

Case 2:19-cv-05475-GRB-RML   Document 1-2   Filed 09/26/19   Page 97 of 100 PageID #: 105

and exposure to human health, safety and welfare, including the risks of carcinogenicity, toxicity, injury and illness, from BNL employees, contractors and/or subcontractors, including RONALD YUHAS, during the period 1947 – 2006 if not later.

418.    The foregoing fraudulent concealment of AUI caused, contributed to and were substantial factors resulting in RONALD YUHAS' toxicity, injury, illness, harm, losses and damages.

419.    The foregoing conduct of AUI caused, contributed to and were substantial factors resulting in RONALD YUHAS' renal cystic disease, chronic kidney disease, diminished kidney function, renal impairment, COPD, Crohn's disease, and other illnesses and injuries, conscious pain and suffering, grave injuries, loss of function and use of an organ, consequential medical sequelae, scarring, disfigurement, recurrence risks, worsened prognosis, decreased life expectancy, distress, anguish, worry, anxiety, medical monitoring, limitations in activities of daily living, and loss of enjoyment of life.

420.    The injuries, illnesses, harm, losses and damages sustained by RONALD YUHAS were caused solely and wholly by virtue of the foregoing acts, omissions and conduct of AUI and were in no way caused and/or contributed to by Mr. YUHAS.

421.    As a result of the foregoing conduct, RONALD YUHAS has been damaged in an amount in excess of the jurisdiction of all lower courts in the State of New York and is entitled to compensatory and punitive damages that exceed the jurisdictional limits of all lower courts.

95

Case 2:19-cv-05475-GRB-RML Document 1-2 Filed 09/26/19 Page 98 of 100 PageID #: 106

422.   By reason of the foregoing, plaintiff RONALD YUHAS is entitled to compensatory and punitive damages from defendants AUI for his non-economic and economic injuries that exceed the jurisdictional limits of all lower courts.

423.   By reason of the foregoing, plaintiff RONALD YUHAS demands judgment against defendants in the amount of $25,000,000.00 for compensatory and punitive damages.

**WHEREFORE,** plaintiff RONALD YUHAS demands judgment awarding compensatory and punitive damages on the first, second, third, fourth, fifth, and sixth causes of action in the Complaint in an amount totaling $25,000,000.00 and that exceeds the monetary jurisdictional limits of all lower courts which would otherwise have jurisdiction; and the interest, costs and disbursements of this action, together with such other and further relief as the court deems just and proper.

Dated: New York, NY
       September 10, 2019

                                        Yours, etc.,


                                        */S/ J. Lanni*

                                        _____
                                        **JOSEPH LANNI**
                                        THE JACOB FUCHSBERG LAW FIRM, LLP
                                        Attorneys for Plaintiff
                                        RONALD YUHAS
                                        3 Park Avenue, 37th Floor
                                        New York, New York 10016
                                        Tel.: 212.869.3500
                                        Fax: 212.398.1532
                                        j.lanni@fuchsberg.com

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 99 of 100 PageID #: 107

TO:    ASSOCIATED UNIVERSITIES, INC.
       1400 16th Street NW
       Washington, DC  20036-2252

       ZEP, INC.
       3330 Cumberland Blvd., Ste. 700
       Atlanta, GA 30339

       DOW CHEMICAL CO.
       2211 H. H. Dow Way
       Midland, MI 48674

97

Case 2:19-cv-05475-GRB-RML    Document 1-2    Filed 09/26/19    Page 100 of 100 PageID #: 108

<u>VERIFICATION</u>

JOSEPH LANNI, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am the attorney of record for plaintiff RONALD YUHAS in this action. I have read the annexed SUMMONS & VERIFIED AMENDED COMPLAINT and know the contents of these documents. The contents of these documents are true to my knowledge except for those matters which are stated to be alleged upon information and belief; those matters alleged upon information and belief are believed by me to be true. Those matters alleged upon information and belief are believed by me to be true based upon the facts, records, materials and information contained in my files on this matter.

The reason I make the foregoing affirmation instead of the plaintiff is because plaintiff resides outside of the county where affirmant maintains offices.

Dated:  New York, New York
            September 10, 2019


                                        */S/ J. Lanni*

                                        _____
                                        JOSEPH LANNI

98